[Civ. No. 1106. Fifth Dist. May 29, 1970.]

REDEVELOPMENT AGENCY OF
THE CITY OF FRESNO, Plaintiff and Appellant, v.
WILLIAM L. PENZNER, Defendant and Respondent.

418

COUNSEL

Ross, Webber & Hackett and Robert S. Webber for Plaintiff and Appellant.

Cox & Cummins and Charles L. Hemmings for Defendant and Respondent.

OPINION

GARGANO, J.—Plaintiff appeals from an order granting defendant a new trial. The chronology is this:

Plaintiff, a public entity, commenced this action on May 4, 1966, to condemn two parcels of real property owned in fee by defendant, William L. Penzner. The complaint named City of Fresno Mall Assessment District No. 1, a special assessment district formed pursuant to the Pedestrian Mall Law of 1960 (Sts. & Hy. Code, div. 13, § 11000 et seq.), as one of the defendants. This special assessment district may levy assessments against property located within its boundaries, and the unpaid assessments are represented by improvement bonds issued pursuant to the Vehicle Parking District Law of 1943.[1]

On May 31, 1966, plaintiff entered into a stipulation with the City of Fresno and with Walter P. Berg, the city's controller and treasurer. The stipulation was filed on June 2, 1966, and was approved by the presiding judge on that date; the judge signed an order adopting its provisions. The stipulation, in essence, states that the Penzner properties are located within City of Fresno Pedestrian Mall Assessment District No. 1 and were assessed for benefits derived from the formation of the district; that these special assessments are liens against the properties and are represented by duly issued assessment bonds; that the city and its controller and treasurer are authorized by law to collect the assessments and to cancel the liens and discharge the bonds; that the city appeared in the action but was relieved of further appearances until the amount of the condemnation award, as between plaintiff and all defendants claiming any interest therein, was first determined pursuant to Code of Civil Procedure section 1246.1.[2]

---

[1]This law is set forth in Division 18, commencing with section 31500 of the Streets and Highways Code.

[2]Code of Civil Procedure section 1246.1 reads as follows: "Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly.

On January 15, 1968, the cause proceeded to trial on the valuation issue, and after five days of trial the jury returned a verdict fixing the value of the Penzner properties substantially in accordance with the opinions of Mr. Robert McNab, a real estate appraiser appointed by the court. The verdict was entered in the minutes, and then the court, without objection from defendant, discharged the jury. A few weeks later the court, over defendant's objection, signed findings of fact and conclusions of law which inter alia provide that the court reserved jurisdiction under section 1246.1 to apportion the respective rights of all defendants in and to the award, and gave the City of Fresno 15 days to seek such apportionment.

On April 15, 1968, the court, pursuant to Code of Civil Procedure section 1264.7, filed a judgment declaring that the Penzner properties were necessary for public use and fixing the condemnation award in accordance with the jury's verdict. On the same day, appellant deposited the award in court, and the court filed an order labeled "Final Order of Condemnation" condemning the properties to appellant in fee simple absolute (*Hamacher* v. *People*, 214 Cal.App.2d 180, 183 [29 Cal.Rptr. 513]). On April 29 respondent moved for a new trial, and his motion was granted. The court specified three reasons for granting the motion: that the judgment did not determine the rights of all defendants claiming an interest in and to the property condemned; that the procedure required by Code of Civil Procedure section 1246 was not followed because the City of Fresno did not file an answer; that the jury had been discharged and could not try the second phase of the case as provided by Code of Civil Procedure section 1246.1.

We turn first to the trial judge's statement that the judgment "does not determine the rights of all persons claiming an interest in and to the property condemned."

■ The trial court properly severed the valuation issue from the apportionment issue, and after the jury returned its verdict on the former, correctly retained jurisdiction to determine the respective rights of all defendants in and to the award. ■ Section 1246.1 is a procedural statute "under which a condemnor may insist that the total award for the property to be taken be first determined and then, in the second phase of the trial, the respective shares of the multiple owners in that award be ascertained." (*People* ex rel. *Dept. of Public Works* v. *Lynbar, Inc.*, 253 Cal.App.2d 870, 878 [62 Cal.Rptr. 320].) The court merely bifurcated

The costs of determining the apportionment of the award shall be allowed to the defendants and taxed against the plaintiff except that the costs of determining any issue as to title between two or more defendants shall be borne by the defendants in such proportion as the court may direct."

the case for trial as it was required to do by statute, and the judgments which it signed merely related to the first phase of the proceeding, not the apportionment phase in which appellant has no interest. (Cal. Condemnation Practice (Cont. Ed. Bar) Cal. Specialty Handbook No. 4, § 16.2, pp. 368-369.)

The court's second reason for granting a new trial is an unwarranted construction of section 1246 of the Code of Civil Procedure and places form over substance. The obvious purpose for requiring a defendant in a condemnation action to set forth his estate or interest in the condemned property by way of answer is to enable the condemnor to acquire clear title to property needed for public purposes as expediently as possible. And, when section 1246 is read in conjunction with section 1246.1 it streamlines the rules of pleading in eminent domain proceedings by making it possible for defendants having conflicting interests in property condemned by a public agency to litigate their adverse claims to the condemnation award without the necessity of filing cross-complaints (*People v. Frahm*, 114 Cal.App.2d 61, 62 [249 P.2d 588]). The narrow construction of section 1246 contested for by respondent, if adopted, would create an anomaly in the law and would do violence to the apparent intent and purpose of the Legislature.

Furthermore, respondent has failed to demonstrate that he was prejudiced. Plaintiff's complaint named the City of Fresno Mall Assessment District No. 1 as a defendant, and the stipultation, which was thereafter filed and which the court incorporated in its order, precisely sets forth this defendant's interest in respondent's properties. Albeit the stipulation was not served on respondent, there is no reason to believe that he would have been better informed if the city had filed an answer; there is no requirement that "a defendant serve his answer upon his codefendants." (*City of Santa Cruz v. MacGregor*, 178 Cal.App.2d 45, 49 [2 Cal.Rptr. 727].)

Finally, it is the decisional law of this state that a special assessment lien, like an ad valorem tax lien, attaches to the condemnation award which has been deposited in court even though the taxing agency does not appear in the action. (*Wilson v. Beville*, 47 Cal.2d 852 [306 P.2d 789]; *City of Los Angeles v. Superior Court*, 2 Cal.2d 138 [39 P.2d 401].) As the court stated in *City of Long Beach v. Aistrup*, 164 Cal.App.2d 41, 48-49 [330 P.2d 282]: "There is no difference in result between a lien on property for a special assessment benefit which cannot be enjoyed and a lien for general taxes on property which likewise cannot be enjoyed. It is well settled in this state that liens for general taxes and liens for special assessments stand on an equal footing before the law."

And, as the court also said at pages 52-53 of the opinion: "Where the award in a proceeding in eminent doman is paid into court, the lien attaches to the award and is removed from the condemned land. (*Wilson v. Beville,* 47 Cal.2d 852, 855 [306 P.2d 789]; *Pomona College* v. *Dunn,* 7 Cal.App.2d 227, 232 [46 P.2d 270].) The lien remains a vested interest in the award, which interest must be determined by the trial court. (*City of Vallejo* v. *Superior Court,* 199 Cal. 408, 416-418 [249 P. 1084, 48 A.L.R. 610].) After the amount of award has first been determined, the court is empowered in the same proceeding to determine the respective rights of the defendants having divided interests in the property and to apportion the award accordingly. (Code Civ. Proc., §§ 1246.1, 1247, subd. 3.)"

Respondent argues that the *City of Long Beach* case, *supra,* was repealed by the amendment which the Legislature made to Revenue and Taxation Code section 4986 in 1959. Under this section, ad valorem taxes, penalties and costs, if delinquent, must be paid out of the award which has been deposited into court; current ad valorem taxes which are a lien are prorated as of the time title is transferred or possession taken, whichever is earlier. But, because the section is silent as to special assessment liens, respondent concludes that, by legislative fiat, these liens must be treated differently.

In 1959 the section was amended and no longer permits outright cancellation of delinquent ad valorem tax liens; as to voluntary sales to a tax exempt public agency, ad valorem tax liens are transferred from the secured roll to the unsecured roll and become the personal obligation of the assessee; as to involuntary sales, the taxes are paid out of the condemnation award. Understandably, the section, as amended, does not mention special assessments because under article XIII, section 1 of the California Constitution public agencies are not exempt from such assessments (*Inglewood* v. *County of Los Angeles,* 207 Cal. 697 [280 P. 360]; *Estate of Simpson,* 43 Cal.2d 594 [275 P.2d 467, 47 A.L.R.2d 991]), and pre-existing special assessment liens against properties acquired by such public agencies are not subject to outright cancellation. We, therefore, do not believe that the 1959 amendment (Stats. 1959, ch. 1023, § 3, p. 3045) changes the decisional law of this state as to special assessments. On the contrary, it would be incongruous to hold that general tax liens attach to the condemnation award but special assessment liens do not, even though the liens stand on the same footing (Gov. Code, § 53935).

We turn next to the court's third reason for granting respondent a new trial; it is evident that the court believed that respondent was entitled, as

a matter of absolute right, to have the same jury which heard the valuation phase of the trial also hear the apportionment phase.

We agree with respondent's contention that under section 1246.1 of the Code of Civil Procedure the right to a jury trial on issues of fact embraces the apportionment phase of the trial (*Costa Mesa Union School Dist.* v. *Security First Nat. Bank,* 254 Cal.App.2d 4, 13 [62 Cal.Rptr. 113]). We also believe that ordinarily, defendants having conflicting interests in the award, may insist on the same jury. Logically, in a case of multiple ownerships, where the property must first be evaluated by the jury in arriving at the value of the whole and then separated in apportioning the award, the jury which heard the valuation testimony should also hear the apportionment testimony. Nevertheless, we do not believe that the right to the same jury to hear both phases of the trial is jurisdictional. And, this is particularly true in a case, such as this, where the issues are not interrelated. For example, if the right to have the same jury hear both phases of a bifurcated condemnation trial were jurisdictional, it would mean that in a case where one or more jurors became incapacitated after the jury had returned a verdict fixing the condemnation award, the defendant could insist on a complete new trial on the issue of just compensation, even though the apportionment issues were not related to the just compensation issue. This result would defeat the very purpose of section 1246.1 without subserving the interests of justice.

In the instant case, respondent's trial counsel was present when the jury returned its verdict fixing the condemnation award. Moreover, he presumably knew that the court had bifurcated the trial. Yet, he stood silently by and made no objection when the court discharged the jury. While we are reluctant to hold that respondent waived his right to a jury for the second phase of the trial, we conclude that he is estopped from demanding the same jury.

In any event, we are not convinced that in this case there are any remaining factual issues to be resolved by a jury. The nature, extent and validity of the challenged special assessment liens are primarily questions of law to be resolved by the court, not questions of fact to be resolved by a jury. In fact, we question respondent's right to even challenge the validity of these special assessments in this proceeding. Both the Pedestrian Mall Law of 1960 and the Vehicle Parking District Law of 1943 allow a landowner ample opportunity to contest proposed assessments, and it is unlikely that such assessments can be collaterally attacked in a proceeding of this nature. We do not, however, reach this question in this appeal.

Respondent's final thrust is that he is entitled to a new trial because the jury should have been permitted to consider "the value of the Penzner

property to the extent of any enhancement of value from the improvements financed by the special assessment." But, according to the stipulation, the alleged assessments must have been made more than one year before respondent filed his answer, and almost two years before the trial. Thus, respondent should have known that the value of his properties was enhanced by benefits derived from the formation of City of Fresno Pedestrian Mall Assessment District No. 1 at the time of the trial, and he could have presented this evidence on the issue of value had he chosen to do so. Significantly, respondent was not granted a new trial on the ground that he was prevented from presenting competent evidence on the valuation issue, nor was his motion granted on the ground that the jury's verdict was inadequate.

 We note from the clerk's transcript that respondent has filed a cross-appeal from the judgment; however, respondent has urged no point in his brief or at oral argument in support thereof. We have no choice but to presume that the cross-appeal is without merit and has been abandoned.

The order granting a new trial is reversed; the cause is remanded with directions to the trial court to proceed with the apportionment of the award in accordance with the views expressed herein.

The cross-appeal is dismissed.

Stone, P. J., and Coakley, J., concurred.