[No. A024677. First Dist., Div. One. Apr. 24, 1986.]

MANUEL REYNA et al., Plaintiffs and Respondents, v.
LINDA McMAHON, as Director, etc., Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Thomas Warriner, Assistant Attorney General, and Charlton G. Holland, Deputy Attorney General, for Defendant and Appellant.

Evelyn R. Frank, Ralph Murphy, Elizabeth R. Arnold and Jane Grant Kerr for Plaintiffs and Respondents.

## OPINION

**NEWSOM, J.**—This case presents the single legal issue of the meaning of Welfare and Institutions Code section 11250.4.[1] Appellant, the Director of the Department of Social Services[2] (hereafter the state), argues that the statute prohibits payment of aid to families with dependent children (hereafter AFDC) to those participating in a strike. Respondents argue that section 11250.4 restricts such payments only where the federal government participates in funding AFDC benefits. In light of the clear language of the statute and the relevant legislative history, we conclude that section 11250.4 restricts AFDC payments to strikers only when there is federal financial participation.

Prior to June 1, 1983, plaintiff Manuel Reyna was employed and provided the sole source of income to his family. On June 1, his labor union instituted a strike and Reyna became unemployed. In June and July, the Reyna family applied for public assistance and were told that they were ineligible because of Manuel Reyna's status as a striker. The state concedes that the Reynas would have been eligible for state-only AFDC payments but for the strike issue.

On August 11, 1983, Manuel Reyna, his wife and the California Coalition of Welfare Rights organizations (a nonprofit organization composed of welfare organizations who advise welfare recipients) filed a complaint for declaratory and injunctive relief and petition for writ of mandate against the state defendants. The complaint alleged the existence of a policy of denying state-only AFDC benefits to strikers and their children. This allegation was neither denied nor admitted. On October 6, 1983, the superior court issued a preliminary injunction restraining the state defendants from refusing to provide benefits to Reyna and ordering the state to instruct all county welfare departments to notify all persons who were denied benefits based on their status as strikers that they might now be eligible for benefits. The state appealed this order on October 17.[3]

On November 18, 1983, pursuant to plaintiffs' request for sanctions and further relief incidental to the preliminary injunction, the court entered an

---

[1]Section 11250.4 reads, in part, as follows: "To the extent required by federal law, aid under this chapter shall not be payable to a family budget unit if a caretaker relative is, on the last day of the month, participating in a strike, . . ."

[2]The state Department of Finance and its director were named defendants, but did not participate in the action and have not appealed.

[3]This appeal and the subsequent appeal from an order of November 19 are moot, as these orders relating to the preliminary injunction were merged in the summary judgment and permanent injunction of January 13, 1984. (*Pacific Gas & Electric Co.* v. *City of Berkeley* (1976) 60 Cal.App.3d 123, 126, fn. 4 [131 Cal.Rptr. 350].)

order clarifying the state's responsibility to notify AFDC applicants of their potential eligibility for benefits. The state filed a "protective appeal" of this order on November 21.

Subsequently, the state interpreted the preliminary injunction as applying only to two-parent families. Plaintiffs then sought summary judgment and a permanent injunction requiring the state to provide state-only benefits to all otherwise eligible families which included a striker. Judgment was entered on January 13, 1984, declaring the regulation issued by the state invalid to the extent that it permits the denial, reduction or termination of state-only AFDC benefits to families of strikers. (State Department of Social Welfare, Manual of Policies and Procedures: Eligibility and Assistance Standards, § 44-206.) The state appealed on January 23, 1984.

We begin our consideration of this case with a brief review of the AFDC program and recent federal legislation regarding strikers. The AFDC program was established in 1935 to provide benefits to families whose children were needy because of the death or absence of a parent. (See *Batterton* v. *Francis* (1977) 432 U.S. 416, 418-420 [53 L.Ed.2d 448, 452-453, 97 S.Ct. 2399].) In 1961, Congress extended the program to allow states to provide benefits to two-parent families in which the children were deprived of support because of an unemployed parent (hereafter AFDC-U). (See *Califano* v. *Westcott* (1979) 443 U.S. 76, 79-80 [61 L.Ed.2d 382, 387, 99 S.Ct. 2655].) States may obtain federal contributions to the AFDC program when one parent has been unemployed for 30 days and has the required attachment to the labor market. (42 U.S.C. § 607.)

California enacted legislation to participate in the federal AFDC-U program. (Welf. & Inst. Code, § 11201, formerly § 1500.4.) In addition, the Legislature provided benefits to all families with unemployed parents regardless of whether federal standards were met. (Welf. & Inst. Code, § 11201, subd. (a)(2).) Thus, California provides both a joint federal-state AFDC-U program and a state-only program.[4]

The price of obtaining federal contributions to the joint federal-state program is that the eligibility standards must conform to federal criteria. (*Darces* v. *Woods* (1984) 35 Cal.3d 871, 880 [201 Cal.Rptr. 807, 679 P.2d 458].) A state-only program, however, is free to provide more liberal benefits. (*Id.,* at p. 895.)

---

[4]Welfare and Institutions Code section 11315 expressly provides for the "State-only AFDC-U program." The Legislature has limited this program in a manner not relevant in this case.

Prior to 1981, the federal government gave the states the option of paying AFDC-U benefits to families where the parent was unemployed due to participation in a strike. (57 Ops.Cal.Atty.Gen. 366 (1974).) California elected to pay AFDC-U benefits to strikers. (*Id.,* at p. 372.)

In 1981, Congress enacted the Omnibus Budget Reconciliation Act (hereafter OBRA), requiring that state plans for aid to needy families with children provide that no aid shall be payable to families of strikers. (42 U.S.C. § 602(a)(21)(B)(i) and (ii).)[5]

In extraordinary session in early 1982, the California Legislature enacted section 11250.4 of the Welfare and Institutions Code, providing that "[t]o the extent required by federal law, . . ." aid would not be payable to strikers. Subsequently, the state Department of Social Services issued a regulation disqualifying strikers and their families from receipt of AFDC benefits. (State Department of Social Welfare Manual of Policies and Procedures: Eligibility and Assistance Standards, 44-206.1, subd. (f), and § 44-206.2, subd. .22.)

■ The rulemaking authority of any administrative agency is limited by the terms of the controlling statutes. (*Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97], cert. den. *sub nom. Swoap* v. *Cooper,* 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 498].) ■ Thus, resolution of the issue in this case depends upon the meaning given to the phrase "[t]o the extent required by federal law" at the beginning of section 11250.4. In support of its position that this phrase merely describes the scope of the restriction on payments under the state-only AFDC-U program, the state argues that the provisions of OBRA were automatically incorporated by the language of section 11201, subdivision (a)(1) and (2). That section states: "(a) A child shall be considered to be deprived of parental support or care due to the unemployment of his or her parent or parents when either of the following conditions is met: [¶] (1) The parent qualifies as an unemployed parent in accordance with the standards for unemployed parents set by the federal government. [¶] (2) The parent does not qualify as an unemployed parent in accordance with federal standards, but the parent meets the conditions of eligibility set forth in subdivision (b)."

This argument concludes that there was no need to enact section 11250.4 to conform state law to OBRA, and that that section was hence intended to

---

[5]Section 602(a)(21)(B), requires that a state plan must provide: "(i) that aid to families with dependent children is not payable to a family for any month in which any caretaker relative with whom the child is living is, on the last day of such month, participating in a strike, and (ii) that no individual's needs shall be included in determining the amount of aid payable for any month to a family under the plan if, on the last day of such month, such individual is participating in a strike; . . ."

apply to the state-only program referenced in section 11201, subdivisions (a)(2) and (b). We disagree with this analysis.

The starting point for any analysis of the meaning of legislation is the language of the statute itself. Section 11250.4 seems, at first blush, to clearly state that AFDC-U payments shall not be made to strikers to the extent required by federal law. Looking to the applicable federal law to determine the "extent" to which strikers shall be ineligible, we find that withholding aid from strikers is a condition of federal participation in the joint federal-state AFDC program. (42 U.S.C. § 602(a)(21)(B)(i).) Thus, at first reading, the language seems to relate only to the federal-state program. The state, however, finds the statute ambiguous and points to the language "aid under this chapter" as an indication that all aid under chapter two of part three of division 9 of the Welfare and Institutions Code is affected. The state reads the words "[t]o the extent required by federal law" as a means of defining the meaning of the word "strike" rather than as a limit on the scope of section 11250.4. The statute does not expressly state whether a restriction on the state-only program is intended. Assuming that this creates an ambiguity, we turn to an examination of the relevant legislative history.

The Legislature considered legislation relating to OBRA in special session in 1981. The purpose of that session, in part, was to remedy "State budget problems" created by OBRA. (Governor's Budget Message to Leg. (Nov. 9, 1981) 10 Assem. J. (1981 First Ex. Sess.) p. 3.) The primary issue considered was to "bring California's welfare (AFDC) program into conformity with the newly restructured federal law which changed certain eligibility and benefit levels of AFDC." (*Id.*, at p. 4.) The Legislature noted that OBRA "restructured the joint federal and state funding of welfare payments . . . ." (*Ibid.*) The need for quick action in passing new legislation was to save the state's share of 120 million dollars' worth of reduced benefits and to avoid any federal penalties for noncompliance. (*Id.*, at pp. 4-5.)

The Legislature's perception that changes had to be made in the state law to assure compliance with OBRA is reinforced by the language of the applicable federal regulation, which provides that, in order to obtain federal approval, a state plan must provide for the denial of benefits to strikers. (45 C.F.R. § 233.106 (1985).) In addition, the state is required to define the term "strike." (*Ibid.*) These facts strongly indicate that the Legislature was concerned only with the joint federal-state program when it enacted the striker exclusion of section 11250.4. No mention is made at any time of the state-only AFDC-U program. We disagree with the state's contentions that the Legislature saw no need to conform state law to OBRA and intended

only to define the scope of the term "strike" when it enacted section 11250.4.

The legislative history indicates that the provisions of section 11201, subdivision (a)(1), were not sufficiently clear to qualify as a plan providing for the denial of AFDC benefits to strikers required by federal law. If the Legislature intended to change the state-only program, it could merely have omitted the words "[t]o the extent required by federal law" from section 11250.4.

Our conclusion is reinforced by the fact that in some instances California limited the effect of decreases in benefits resulting from the terms of OBRA, rather than utilizing OBRA to institute additional funding reductions in the state-only plan. For example, the terms of section 11250.4 itself limit the type of strikes that will disqualify an applicant. Lockouts and strikes necessitated by health or safety hazards are exempt from the striker restriction. In addition, while OBRA restricts payment of benefits to women pregnant with their first child until the third trimester, California provides for payment as soon as the pregnancy is verified. (42 U.S.C. § 606(b); Welf. & Inst. Code, § 11450.)

The state dismisses these instances of legislative tempering of the funding reductions of OBRA by arguing that the striker restriction differs from other restrictions of OBRA because it alone is a federal standard for unemployed parents pursuant to section 11201. Because of this circumstance, only the striker prohibition of OBRA was already incorporated in California law by section 11201, subdivision (a)(1). Respondents counter that OBRA's striker provision applies, not only to the AFDC-U program, but to all AFDC programs, and that it could not therefore be considered a federal standard for unemployed parents. Respondents conclude that the federal striker restriction is more properly considered as a general rule of AFDC eligibility. In light of the clear legislative statement that California was required to pass new legislation to conform to OBRA and avoid possible loss of funding and federal penalties, we find respondents' explanation compelling.

We conclude that the legislation itself and the legislative history surrounding passage of section 11250.4 support our determination that section 11250.4 disqualifies strikers from receipt of AFDC-U benefits only when federal funds are involved in the program.

The state-only AFDC-U program is not affected by the striker exclusion of Welfare and Institutions Code section 11250.4. The judgment of the trial court is affirmed and the matter is remanded for purposes of reporting compliance and determining attorneys' fees as provided in the judgment. The

appeals from the preliminary injunction of October 6, 1983, and the order of November 18, 1983, are moot and are hence dismissed.

Racanelli, P. J., and Elkington, J., concurred.