[Nos. A030459, A031366, A032866. First Dist., Div. Four. Dec. 31, 1987.]

TAMIE SHAW, Plaintiff and Respondent, v.
LINDA McMAHON, as Director, etc., et al., Defendants and
Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Richard D. Martland Chief Assistant Attorney General, and Charlton G. Holland, Assistant Attorney General, for Defendants and Appellants.

Elizabeth R. Arnold, Jane Grant Kerr, Philip J. Bertenthal and Casey McKeever for Plaintiff and Respondent.

OPINION

ANDERSON, P. J.—

## I.  INTRODUCTION

Federal law provides that when unemployed parents who are the recipients of benefits from the federally funded aid to families with dependent children program (AFDC-U) receive a nonrecurring lump-sum of money it shall be treated as income, with the consequence that a fixed period of automatic ineligibility to receive such benefits is imposed based upon the size of the sum and the applicable AFDC-U monthly payment standard. (42 U.S.C. § 602 (a)(17); 45 C.F.R. § 233.20(a)(3)(ii)(F).) The major issue presented on these consolidated appeals is whether current provisions of the Welfare and Institutions Code[1] (especially § 11157) and administrative regulations require the same result with respect to that version of the same program funded exclusively by the state (State-only AFDC-U). (§§ 11201, subd. (b), 11315, subd. (a).)

## II. · BACKGROUND AND PROCEDURE

Petitioner Tamie Shaw (plaintiff) commenced this action by filing a verified petition for writ of mandamus together with a complaint for declar-

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

atory and injunctive relief. She alleged that on February 29, 1984, one week after she received a $10,000 insurance settlement for her injuries in a 1980 automobile accident, her AFDC eligibility was terminated. When she applied for resumption of AFDC benefits two months later, "[h]er application was denied by a notice which stated that her receipt of the insurance settlement . . . rendered her ineligible for AFDC from April 1984 to October 1985" in accordance with Eligibility and Assistance Standard (EAS) 44-207.4. Plaintiff further alleged that this regulation was unlawful because it "violates" sections 11157 and 11201. Among the various forms of relief sought by plaintiff were a writ of mandamus compelling defendants[2] "to provide State-only AFDC-U benefits to otherwise eligible families without regard to any period of ineligibility based on receipt of a lump sum" and an injunction prohibiting denial of benefits on a contrary basis.

After considering the written and oral arguments of the parties, the trial court issued a permanent injunction and a peremptory writ of mandamus as prayed by plaintiff. Defendants thereafter moved to set aside this decision on the grounds that a recent amendment to section 11157 "make[s] it clear that the lump-sum rule applies to both state only and federal share AFDC programs." This motion was denied, the trial court ruling that the amendment did not validate application of the lump-sum rule to State-only AFDC-U benefits. A judgment ordering the injunctive and mandamus relief requested by plaintiff was subsequently entered. The court specifically noted in the judgment that "The provisions of this injunction are prohibitory, and shall not be stayed if an appeal is filed by defendants."[3]

Defendants appealed from the judgment.[4] Their petition for a writ of supersedeas and request for a stay of the judgment was denied by this court.

[2] Named as defendants (and hereinafter referred to as such) by plaintiff were the Departments of Social Services and Finance, together with their respective directors.

[3] According to the actual terms of the judgment, defendants were "enjoined and prohibited from applying EAS 44-207.4, the federal lump sum rule, to the state-only AFDC program, including single parent and two parent households." Defendants were also ordered to issue an "All-County Letter" to county welfare departments throughout the state advising and instructing them to comply with "the terms of this order and . . . judgment" within 30 days of the judgment's filing date of January 23, 1985. Various other procedures were specified to implement the reevaluation of State-only AFDC-U recipients' benefit eligibility, which were to be determined as of October 1, 1984. The court reserved jurisdiction "for one year to ensure compliance with this order." It also ruled that plaintiff was entitled to an award of attorneys' fees in an amount to be determined later.

[4] Defendants advise that the appeal is technically moot as to plaintiff, who apparently had her State-only AFDC-U eligibility restored. Defendants do not, however, ask that their appeal be dismissed. In any event, given that the judgment has statewide application and involves a question of continuing public interest, we will reach the merits of defendants' appeals. (See *Alternatives for California Women, Inc.* v. *County of Contra Costa* (1983) 145 Cal.App.3d 436, 445 [193 Cal.Rptr. 384]; *King* v. *Martin* (1971) 21 Cal.App.3d 791, 794 [98 Cal.Rptr. 711].)

Pursuant to Code of Civil Procedure section 1097, plaintiff then moved the trial court for an order compelling defendants' compliance with the judgment. The motion was granted and an order entered as requested. Defendants filed a timely notice of appeal from this order.[5] The contentions on the judgment and the compliance order are discussed in separate chapters.

## III. REVIEW

### A. *The Judgment*

By the time the trial court entered its judgment, the core of the controversy had boiled down to the interpretation of two versions of section 11157. Our task of reviewing the correctness of the trial court's statutory constructions has been compounded by the fact that section 11157 was amended yet again during the pendency of these appeals. ■ The rule that an injunction is to be evaluated according to the most current law governing at the time of an appeal's resolution (*McKinney* v. *Board of Trustees* (1982) 31 Cal.3d 79, 85, fn. 1 [181 Cal.Rptr. 549, 642 P.2d 460]; *Citizens for Non-Toxic Pest Control* v. *Department of Food & Agriculture* (1986) 187 Cal.App.3d 1575, 1584 [232 Cal.Rptr. 729]) obliges us to consider section 11157 at each stage of its evolutionary development. Before doing so, however, it will be useful to place section 11157 in its context in the State-only AFDC-U scheme.

The AFDC program was initiated by Congress as part of the Social Security Act of 1935. (Pub.L. No. 271 (Aug. 15, 1935) 47 Stat. 620.) In 1961 the AFDC-U program was experimentally extended to authorize states to receive matching federal funds for a state-administered system. (Pub.L. No. 87-31 (May 8, 1961) 75 Stat. 75.) The experiment was apparently deemed a success, for the program was made permanent in 1968. (Pub.L. No. 90-248 (Jan. 2, 1968) 81 Stat. 821.) California elected to participate in this model of cooperative federalism. (See Stats. 1963, ch. 510, p. 1372; Stats. 1965, ch. 1784, p. 3977.) ■ The state was thus obligated to comply with federal laws and regulations in order to receive federal funds. (See 42 U.S.C. § 604(a), (d); *Lukhard* v. *Reed* (1987) 481 U.S. 368 [95 L.Ed.2d 328, 107 S.Ct. 1807]; *Shea* v. *Vialpando* (1974) 416 U.S. 251, 253 [40 L.Ed.2d 120, 125, 94 S.Ct. 1746]; *Darces* v. *Wood* (1984) 35 Cal.3d

---

[5] No. A031366 is an appeal by defendants from the trial court's subsequent order awarding plaintiff attorneys' fees pursuant to section 10962. (See fn. 3, *ante*.) Although in their opening brief defendants profess an intention to dismiss this appeal, no formal request to this effect has been forthcoming. Defendants' failure to proceed on this appeal is tantamount to a request for dismissal, which will in any event be ordered. (See *Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 50 [150 Cal.Rptr. 722]; *Redevelopment Agency* v. *Penzner* (1970) 8 Cal.App.3d 417, 426 [87 Cal.Rptr. 183]; cf. Cal. Rules of Court, rule 19(b).)

871, 880 [201 Cal.Rptr. 807, 679 P.2d 458].) A state is, however, free to adopt and implement a more liberal eligibility standard with respect to a State-only AFDC-U program. (See *Engelman v. Amos* (1971) 404 U.S. 23, 24 [30 L.Ed.2d 143, 144-145, 92 S.Ct. 181]; *Darces v. Woods, supra,* at pp. 894-895; *Reyna v. McMahon* (1986) 180 Cal.App.3d 220, 223 [225 Cal.Rptr. 405].) California has enacted its version of such a program. (§§ 11201, subd. (b), 11315, subd. (a); see in detail, *post.*)

The first version of section 11157 with which we must concern ourselves was enacted in late 1981. As relevant here, it read in pertinent part as follows: "To the extent required, as a condition for receipt of federal funds, by federal law, lump-sum payments of income, as defined by federal law, received by an applicant for or recipient of aid under Chapter 2 (commencing with Section 11200) shall be considered income in the month received and the family shall be ineligible for aid for the number of months that equals the sum of all income received during such month less all applicable income disregards divided by the standard of need applicable to the family . . . ." (Stats. 1982, First Ex. Sess., ch. 3, § 10, p. 6894.)

The second version—the one brought to the trial court's attention shortly before the judgment was entered—insofar as it is germane to our inquiry, amended the prefatory part of section 11157 so that it read: "To the *same* extent *as* required, as a condition for receipt of federal funds, by federal law . . . ." (Italics added, Stats. 1984, ch. 1447, § 4, p. 5063.) This amendment was an urgency measure effective September 26, 1984 (*id.,* § 16, p. 5072), only five days before the October 1, 1984, date to which the judgment was keyed. (See fn. 3, *ante.*)

The final change wrought by the Legislature occurred during the pendency of these appeals. Effective January 1, 1987, section 11157 was amended to delete the words "same" and "as" inserted by the 1984 amendment. (Stats. 1986, ch. 1402, § 4.) This brings the evolution of section 11157 full circle, returning its first sentence (the part which the parties treat as controlling) to the exact wording originally construed by the trial court. The correctness of that construction we now consider.

Plaintiff's position at all times has been simple. For her, the variants of section 11157's opening references to "federal funds" and "federal law" demonstrate that California's adoption of the lump-sum rule is confined to the joint state-federal AFDC-U program and thus has no application to the State-only AFDC-U program. Defendants contend that the language " 'lump-sum payments . . . received by an applicant for or recipient of aid under chapter 2' " does apply to the state-only program author-

ized by sections 11201 and 11315 because these provisions are within chapter 2. (§§ 11200-11489.)

█  In construing section 11157 and ascertaining the legislative intent behind it, we first look to the statute's language. (*Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 51 [210 Cal.Rptr. 781, 694 P.2d 1153]; *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272]; *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].) All of that language must be considered, giving where possible significance to each word, avoiding constructions which make words surplusage, and reading the statutory language according to its ordinary and usual import. (*Steketee* v. *Lintz, Williams & Rothberg, supra,* at p. 52; *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) This court recently reiterated that statutes should receive a practical and commonsense construction which achieves a reasonable result consistent with legislative purpose and intent. (*Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1181-1182 [224 Cal.Rptr. 285].)  █  Application of these principles leaves no doubt that the trial court properly sustained plaintiff's construction as correct.

The opening part of section 11157 reading "To the extent required, as a condition for receipt of federal funds, by federal law" is naturally interpreted as referring only to the joint state-federal AFDC-U program. The State-only AFDC-U program, being funded and administered entirely by the state would not be "required . . . by federal law" to do anything "as a condition for receipt of federal funds" because no federal funds were to be received. The ordinary import of the quoted language is therefore pertinent only to the joint state-federal program and thus irrelevant to the state-only program. The quoted language, read in the context of the two existing programs, naturally conveys a distinction between them. If, as defendants contend, the Legislature did intend to make the lump-sum rule applicable to both programs, maintaining this implicit distinction would be unnecessary. The fact that the Legislature did not see fit to amend the statutes authorizing the state-only program is strong evidence that such a fundamental change was not contemplated. The construction defendants urge would more reasonably be found in the *absence* of the quoted language. The fact that the State-only AFDC-U program is within chapter 2 is without consequence in the absence of a more specific legislative intent to make substantive changes in that program.

This much we think discernible from the language of the statute. We believe that the construction of section 11157 claimed by plaintiff and sustained by the trial court is a practical one which is consistent with the

Legislature's apparent aim to maintain both the joint state-federal and the state-only programs. (See *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda, supra,* 178 Cal.App.3d at pp. 1181-1182.) Defendants' construction is unreasonable in that it would achieve the opposite result and would make the quoted language surplusage. It must therefore be rejected. (See *Steketee* v. *Lintz, Williams & Rothberg, supra,* 38 Cal.3d at p. 52; *City and County of San Francisco* v. *Farrell, supra,* 32 Cal.3d at p. 54.)

Plaintiff has submitted a wealth of legislative materials relative to the 1984 and 1986 amendments of section 11157 which reinforce her construction of that statute. The 1984 amendment of section 11157 was introduced as part of Assembly Bill No. 1557. During the course of the Assembly-Senate conference, the Department of Social Services proposed that sections 11008.13, 11008.14, and 11157 be amended to include the following: "This section shall be applied to all applicants for, and recipients of, aid under Chapter 2, . . . *regardless of whether federal financial participation is available* for the family." (Italics added.) With minor and nonsubstantive modifications, this language was inserted in sections 11008.13 and 11008.14. (Stats. 1984, ch. 1447, §§ 1-2, pp. 5061-5063.) It was not, however, added to section 11157.[6] This omission is compelling evidence against defendants' construction of section 11157. Had the Legislature intended to obliterate the distinctions between the joint state-federal and the state-only programs, it obviously knew how to express such an intent. The only possible conclusion is that it consciously chose to maintain the distinction between the two programs.  ▉ ▉  It is thus appropriate to invoke the principles that "[w]here a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891 [134 Cal.Rptr. 844]; accord *Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1008 [197 Cal.Rptr. 250]; *Fogarty* v. *Superior Court* (1981) 117 Cal.App.3d 316, 320 [172 Cal.Rptr. 594]), and that " '[t]he failure of the Legislature to change the law in a particular respect

[6] This information was derived in large part from legislative committee materials and a declaration executed by Assemblyman Thomas H. Bates, the author of Assembly Bill No. 1557. These materials were considered by the trial court and are a part of the record. We note that Assemblyman Bates's declaration includes substantial hearsay and opinion assertions concerning motive and intent relative to passage of the bill and the effect, if any, on the pending appeal from the judgment in this case. These portions of the declaration have been disregarded, and our use of the declaration has been restricted to factual assertions concerning the events narrated in the text. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701 [170 Cal.Rptr. 817, 621 P.2d 856]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371]; *County of San Diego* v. *Superior Court* (1986) 176 Cal.App.3d 1009, 1021 [222 Cal.Rptr. 484].) Defendants have never disputed the factual accuracy of the declaration's allegations which we have cited.

when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874]; accord *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977 [140 Cal.Rptr. 669, 568 P.2d 394] [text & fn. 10]; *People* ex rel. *Dept. of Transportation* v. *Union Pacific Land Resources Corp.* (1986) 179 Cal.App.3d 307, 315 [224 Cal.Rptr. 487]; *State of California* ex rel. *Dept. of Transportation* v. *Superior Court* (1984) 159 Cal.App.3d 331, 338 [205 Cal.Rptr. 518].) ■■■ Defendants' contention that we should in effect construe section 11157 as if the proposed language had been inserted is consequently untenable. "To do so would not be interpreting the legislative intent but would be a gross example of judicial legislation in contravention of the legislative intent logically implied from the rejection by the Legislature of an identical provision." (*People* v. *Brannon* (1973) 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620]; accord *Western Land Office, Inc.* v. *Cervantes* (1985) 175 Cal.App.3d 724, 741 [220 Cal.Rptr. 784].)

Assembly Bill No. 1557 is made additionally comprehensible when considered in conjunction with Senate Bill No. 2002. The latter, as amended, would have deleted section 11315 (see fn. 6, *ante*) and would have added to section 11201 language specifying that "All other federal requirements and eligibility standards applicable to the federal AFDC-U program shall apply to the State-only AFDC-U program." (See 5 Sen. J. (1984 Reg. Sess.) pp. 8653-8654.) Senate Bill No. 2002 died on the Senate floor in late November of 1984 (see 8 *id.,* pp. 14425, 14609), approximately two months after Assembly Bill No. 1557 had been enacted. (Stats. 1984, ch. 1447, p. 5061 et seq.) The Legislature's almost concurrent passage of Assembly Bill No. 1557 and its rejection of Senate Bill No. 2002 confirm our opinion that defendants' construction of section 11157 is unacceptable. (See *Western Land Office, Inc.* v. *Cervantes, supra,* 175 Cal.App.3d 724 at p. 741; *Seibert* v. *Sears, Roebuck & Co.* (1975) 45 Cal.App.3d 1, 19 [120 Cal.Rptr. 233].)

The insertion of the "same . . . as" wording in the 1984 amendment and its deletion from the 1986 amendment are of no significant moment. As we have seen, the pertinent language of both of these enactments concerns only the joint state-federal AFDC-U program. A reasonable construction of these amendments, when considered in the context of section 11157 in its entirety, denies to these provisions any impact on the existing and established State-only AFDC-U program. Both the plain language of section 11157 and the legislative history recounted above, refute defendants' claim that the Legislature intended a substantial modification of that program. (Cf. *Reyna* v. *McMahon, supra,* 180 Cal.App.3d 220 at pp. 224-226.) This analysis loses none of its force with regard to each and all of the versions of section 11157 effective at various points during this litigation.

Our initial conclusion is that each of those versions is compatible with plaintiff's construction and none supports defendants' construction. ■ We further conclude that EAS 44-207.4[7] was correctly treated by the trial court as void because the regulation is inconsistent with section 11157 in that the regulation purports to extend the lump-sum rule to the State-only AFDC-U program, an extension neither authorized nor required by the statute. The trial court therefore properly enjoined its enforcement. (See Gov. Code, § 11342.2; *Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817 [201 Cal.Rptr. 165, 678 P.2d 378]; *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 680 [170 Cal.Rptr. 484, 620 P.2d 1032]; *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)[8]

### B.  *The Compliance Order*

Following entry of the judgment, a dispute arose between the parties concerning the scope of the relief ordered by the trial court. As part of the "All-County Letter" required by the judgment (see fn. 3, *ante*), defendants advised county welfare authorities that lump-sum recipients were not eligible for State-only AFDC-U benefits if the principal earner of the family met all of the eligibility conditions of the joint state-federal program except the receipt of a lump-sum payment. The trial court held that this was improper and ordered dispatch of a new letter informing local welfare departments that State-only AFDC-U benefits "may not be denied to families because they meet federal requirements for work history or connection to the labor force."

■ Defendants argue that the compliance order issued by the trial court is erroneous and should be set aside. We agree.

The trial court's conclusion that the state-only benefit rule is applicable to all parents receiving AFDC benefits under section 11201, even if the parent (or parents) are eligible for such benefits under the federal law,[9] is errone-

---

[7] EAS 44-207.4 is of such length that it is not feasible to reproduce it here. After reviewing it, we agree with the parties and the trial court that its effect is to implement the lump-sum rule to the State-only AFDC-U program as plaintiff alleged.

[8] Plaintiff in her opening brief requests that we take judicial notice of certain additional materials and events occurring during the 1986 session of the Legislature. This request has been made unnecessary by the preceding discussion. The request is therefore denied.

[9] The compliance order reads in pertinent part as follows: "*Defendant* McMahon and the Department of Social Services *shall issue an All-County Letter* within 20 working days of the date of this order informing the county welfare departments of the terms of this order and instructing them to comply with its terms by *granting state-only AFDC benefits to any eligible families regardless of whether the family meets the federal requirement for work history or connection to the labor force.* [¶] The All-County Letter shall also instruct the county welfare departments to reevaluate the eligibility of any family denied state-only AFDC benefits because

ous. The law is clear that under section 11201 a parent is entitled to joint state-federal unemployment AFDC benefits if he or she qualifies as unemployed under either the federal standards[10] (subd. (a)(1)) or the state standards as specified in subd. (b)(1)-(4) (see § 11201, subd. (a)(2)).[11] Since we have held that under the correct interpretation of section 11157 the federal lump-sum rule is applicable whenever the applicant or recipient is entitled to AFDC-U under the federal law, it follows that the parent qualifying as unemployed under the federal standards must fall within the federal lump-sum rule. An imposition of a unitary state-only rule to all parents regardless of whether they are entitled to receive AFDC-U benefits under the state or federal qualifying standards would be in inherent conflict with our basic holding reached with respect to the applicability of the federal lump-sum rule.

Furthermore, our proposition is buttressed by the specific provisions of the statute as well. *Section 11315, subdivision (a), explicitly provides that the State-only AFDC-U program has been established solely for those parents*

---

they met the federal requirements for work history or connection with the labor force pursuant to the implementation of the January 23, 1985 court order, via the 85-25 All-County Letter; and to provide state only benefits to those eligible families." (Italics added.)

[10]The federal standards require "work history" or "connection to the labor force" which are met if the parents had 6 quarters of work within a period of 13 quarters and are not working more than 100 hours. (42 U.S.C. § 607; 45 C.F.R. 233.100.)

[11]Section 11201 provides in pertinent part as follows: "For the purposes of this chapter, 'unemployed parent' means a natural or adoptive parent with whom the child is living. [¶] (a) A child shall be considered to be deprived of parental support or care due to the unemployment of his or her parent or parents when either of the following conditions is met: [¶] (1) The parent qualifies as an unemployed parent in accordance with the standards for unemployed parents set by the federal government. [¶] (2) The parent does not qualify as an unemployed parent in accordance with federal standards, but the parent meets the conditions of eligibility set forth in subdivision (b). [¶] (b) Except as specified in paragraph (5), a parent who does not meet the federal standards for unemployed parents shall be an unemployed parent for the purposes of this chapter and a family eligible for aid only if the family meets all of the following conditions of eligibility: [¶] (1) The parent is not working or is employed only part time as determined in accordance with standards which may be developed by the department by regulation. The standards shall be consistent with federal law governing part-time employment for unemployed parents. [¶] (2) If the parent is not ill, incapacitated, or over age 65, the parent shall register for employment and cooperate with the Employment Development Department, and shall either: (A) be available for and seeking employment or, (B) be accepted for, or participate in, a training program which has been approved by the department and which is essential for future support. [¶] (3) Notwithstanding the provisions of Section 11270, the parent shall apply for, meet all conditions of eligibility for, and accept any unemployment insurance benefits for which he or she may be eligible. [¶] (4) The parent shall not have refused a bona fide offer of employment without good cause, including additional employment if the parent is employed only part time, or has terminated his or her employment without good cause within the 30 days immediately prior to the beginning date of aid or while receiving aid. The State Department of Social Services shall develop standards for determining good cause, which standards shall be consistent with the standards for good cause developed by the federal government in the work incentive program and consistent with the purposes of this chapter. When the Department of Social Services finds that a parent has refused or terminated employment without good cause, the family shall be ineligible for aid for 30 days."

*who meet the eligibility standards under subdivision (b) of section 11201.*[12] It bears emphasis that *subdivision (b) sets out the eligibility criteria for the State-only AFDC-U benefits.* (See fn. 12, *ante.*) Equally importantly, subsection (5) of subdivision (b) clarifies that in determining unemployment for the purposes of AFDC benefits the federal rules are paramount by spelling out that whenever one parent qualifies as unemployed under the federal standards, it precludes the other parent from availing himself or herself of the State-only AFDC-U program.[13]

█ Plaintiff's claim that the application of different standards to the unemployed parents violates the equal protection clause of the Constitution, requires but a brief reply. In *Darces* v. *Woods, supra,* 35 Cal.3d 871, 894, our Supreme Court emphasized that a state may adopt and apply differing eligibility standards to State-only and federal AFDC-U welfare recipients. Moreover, under well-settled rules equal protection is violated only if persons similarly situated receive different treatment. (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) It is obvious that parents qualifying under federal and state eligibility standards occupy a different status; hence, an application of differing treatment is well justified.

The judgment rendered in appeal No. A030459 is affirmed with the exception of the implementation provisions contained in paragraphs 1-7 which are stricken; the compliance order issued in appeal No. A032866 is vacated; the appeal filed in No. A031366 is dismissed. The parties are to bear their costs on appeal.

Channell, J., concurred.

POCHÉ, J.—Although I concur with the discussion concluding that the lump-sum rule was not injected into the State-only AFDC-U program by the Legislature's various formulations of Welfare and Institutions Code section 11157,[1] I respectfully dissent from that portion of the majority opinion which eviscerates a welfare program consciously maintained by the Legislature.

---

[12] Section 11315, subdivision (a), provides that "The State Department of Social Services shall establish a state-only unemployed parent program for those parents meeting the conditions of eligibility set forth in subdivision (b) of Section 11201. This program shall be known as the 'State-only AFDC-U program.' Eligibility under this program shall be limited to three months in any 12 consecutive months."

[13] Section 11201, subdivision (b)(5), sets out in relevant part: "When one parent in the home (A) is employed fulltime, or (B) qualifies, or would qualify but refuses to do so, as an unemployed parent in accordance with the standards for unemployed parents set by the federal government, the other parent is not an unemployed parent for the purposes of this chapter unless the parent qualifies as an unemployed parent under paragraph (1) of subdivision (a)."

[1] Statutory references are to the Welfare and Institutions Code unless otherwise noted.

The heart of the matter is the reference in subdivision (b) of section 11201 to recipients qualifying "in accordance with the standards for unemployed parents set by the federal government." If the majority is in earnest about requiring recipients to satisfy "the standards . . . set by the federal government," it would logically follow that this means *all* "the standards . . . set by the federal government." The majority concedes that the lump-sum rule is one such standard, refuses to hold it applicable to the state-only program, yet at the same time finds that the federal "work history" rule must be incorporated. I do not know how or on what basis the majority treats the former standard as an apple while the latter qualifies as an orange. On its face the statute's language does not justify picking and choosing which federal standards are applicable to the state-only program, yet this is precisely what the majority does. Nor does the majority identify any discernible basis for making a principled distinction as to which federal standards are in and which are out. At best, the majority's opinion is internally inconsistent; the respective positions regarding the construction of sections 11157 and 11201 are totally irreconcilable. At worst, and as I shall attempt to demonstrate hereafter, the majority's position will make the State-only AFDC-U program a virtual dead letter.

" 'The rule of law in the construction of remedial statutes requires great liberality, and wherever the meaning is doubtful, it must be so construed as to extend the remedy.' " (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434-435 [296 P.2d 801, 57 A.L.R.2d 914].) "The words of a statute will not be literally construed if this would cause an absurd result, or if it would fail to give effect to the manifest purposes of the statute . . . . [Citation.] ' "[T]hat construction is favored which would defeat subterfuges, expediencies, or evasions employed to continue the mischief sought to be remedied by the statute or to defeat compliance with its terms, or any attempt to accomplish by indirection what the statute forbids." ' " (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652].) " '[W]here the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted.' " (*In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].) "We are not at liberty to adopt an interpretation . . . which would ascribe to the Legislature an intent to act capriciously . . . when their language admits of an alternative interpretation which would serve the statutory policy and render application of the law reasonable and just." (*Estate of Yush* (1970) 8 Cal.App.3d 251, 255 [87 Cal.Rptr. 222].) This court is on record as agreeing that "an interpretation which would lead to an unreasonable result or absurdity must be avoided." (*Dreyer's Grand Ice*

*Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1182 [224 Cal.Rptr. 285].)

I take it as a given that the statutes respecting the State-only AFDC-U program qualify as remedial in nature. The statutes establishing that program can only be seen as a conscious decision by the Legislature to establish a more liberal eligibility standard than those governing the joint state-federal AFDC-U scheme. The majority recognizes the Legislature's unquestioned power to make such a decision. (See *Engelman* v. *Amos* (1971) 404 U.S. 23, 24 [30 L.Ed.2d 143, 144-145, 92 S.Ct. 181]; *Darces* v. *Woods* (1984) 35 Cal.3d 871, 894-895 [201 Cal.Rptr. 807, 679 P.2d 458]; *Reyna* v. *McMahon, supra,* 180 Cal.App.3d 220 at p. 223.)

The majority professes its intention "to maintain both the joint state-federal and the state-only programs." (Majority opn., *ante,* p. 425.) Yet this goal is at odds with what the majority does, which is to gut the state-only program and abolish any distinction between it and the joint state-federal AFDC-U program.

One can only assume that there must be some difference between the two programs, or else the Legislature's decision to establish the state-only program (see § 11315, subd. (a)) was nothing less than an exercise in futility. Granted, section 11201 is hardly an exemplar of precise legislative draftsmanship. But even the majority recognizes that section 11201 establishes differing eligibility standards for the joint state-federal program (subd. (a)) than for the state-only program (subd. (b)). The obvious import of section 11201 is that if a parent does not qualify under subdivision (a) for inclusion in the joint program, he or she can qualify for eligibility in the state-only program if the requirements of subdivision (b) are met. Yet this bifurcation flies in the face of subdivision (b)(5)'s incorporation of "the standards . . . set by the federal government." Read literally, this requires a parent to meet all federal standards in order to qualify, not for the joint state-federal program, but for the state-only program. Applied literally, this language makes the state-only program redundant: a parent who qualifies for the state-only program would also qualify for the joint program and would presumably be included in the joint program. If this is the case, who would qualify for just the state-only program? The unavoidable answer would seem to be: no one.

This would make the Legislature's deliberate decision to establish the State-only AFDC-U program a beautiful gesture devoid of any substance. I cannot imagine a more absurd, capricious, or unreasonable result so totally disharmonious with the Legislature's manifest purpose in establishing that program. A different yet logical construction will avoid these dire consequences.

I would construe the reference to "standards for unemployed parents set by the federal government" in subdivision (b)(5) of section 11201 to mean all such standards not incompatible with state law. Defendants conceded before the trial court that the "work history" factor is not an eligibility standard for the state-only program.[2] They recognized in the "All-County Letter" quoted *ante* that "in order to get state-only AFDC-U a principal earner cannot be eligible for the federal AFDC-U program." The same statute that establishes the State-only AFDC-U program also states: "For purposes of this section, if neither parent has a connection to the labor force, as defined by federal law, the family may designate the primary wage earner." (§ 11315, subd. (c).) This provision can only be read as a decisive repudiation of the majority's view that "work history or connection to the labor force" must be treated as a prerequisite for eligibility in the state-only program.

These circumstances put the compliance order in a different and completely sustainable light. The construction of section 11201 I propose is consistent with the principles of statutory interpretation quoted above. It is also the only reasonable way to prevent the State-only AFDC-U program from being consigned to oblivion and becoming "only a promise to the ear to be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." (*Edwards* v. *California* (1941) 314 U.S. 160, 186 [86 L.Ed. 119, 132, 62 S.Ct. 164] (conc. opn. of Jackson, J.).)

My vote is for unqualified affirmance of the judgment and the compliance order.

A petition for a rehearing was denied January 27, 1988. Poché, J., was of the opinion that the petition should be granted. Appellants' petition for review by the Supreme Court was denied March 17, 1988.

---

[2] During the compliance order controversy, counsel for defendants told the trial court: "[I]n looking at the federal and state AFDC-U programs, there are only two significant differences between them. *The federal program requires a recent connection with the work force and the state program does not.* The federal program has a 30[-]day waiting period and the state program does not." (Italics added.)