[No. B146384. Second Dist., Div. Two. Dec. 28, 2001.]

TUCKER LAND COMPANY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Nossaman, Guthner, Knox & Elliott, Alvin S. Kaufer and John T. Hansen for Plaintiff and Appellant.

Pircher, Nichols & Meeks, James L. Goldman; Richards, Watson & Gershon and Steven H. Kaufmann for Defendants and Respondents Rancho Simi Recreation and Park District and Conejo Recreation and Park District.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and Daniel A. Olivas, Deputy Attorney General, for Defendants and Respondents State of California and Santa Monica Mountains Conservancy.

OPINION

**DOI TODD, J.**—The primary issue presented in this appeal is whether the constituent members of a Joint Powers Agency (JPA), created by a joint powers agreement pursuant to Government Code section 6500 et seq., are liable for the contractual obligations of the JPA, where the joint powers agreement specifies that they are not and does not provide for liability other than that of the JPA. We conclude they are not, and finding no other basis of liability, affirm.

BACKGROUND

In 1969 appellant Tucker Land Company purchased 1,500 acres of undeveloped land in the Santa Monica Mountains from the Getty Trust. Ten years later, Tucker sold the land to Eastport Associates for $750,000 in cash and a note for $11.75 million, with an agreement that the note would be reduced to $6.75 million if Eastport were unable to construct an access road to the property.

Eastport was unable to obtain access and ultimately defaulted by failing to pay property taxes. Tucker recorded a notice of default claiming it was owed in excess of $15 million. Eastport filed an action for declaratory relief against Tucker claiming it owed $7.6 million.

While the Tucker/Eastport litigation was pending, Tucker learned that the Mountains Recreation and Conservation Authority (MRCA) was interested in acquiring the 1,500-acre parcel. The MRCA is a JPA formed under a joint powers agreement pursuant to Government Code section 6500 et seq. between three public agencies, the Santa Monica Mountains Conservancy (SMMC), a state agency established for the purpose of acquiring and managing property, and to award grants to other governmental and nonprofit agencies for recreational, open space, park and conservation purposes, the Conejo Recreation and Park District, and the Rancho Simi Recreation and Park District. MRCA's purpose in seeking to acquire the parcel was to preserve open space in the Santa Monica Mountains.[1]

In 1992 Tucker and MRCA entered into a contract by which the Tucker/Eastport note, which was then the subject of pending litigation, was sold to MRCA for $500,000 and an unsecured promissory note for $6.375 million. MRCA agreed to make payments of $150,000 per year towards interest. MRCA was aware of the Tucker/Eastport litigation and the agreement provided that MRCA could rescind the agreement if Tucker did not prevail in the litigation.

In October 1996 Tucker lost the Eastport litigation in the trial court, then filed an appeal. By the end of 1996, Eastport was in bankruptcy and the

---

[1]Section 15 of Mountains Recreation and Conservation Authority Joint Exercise of Powers Agreement provides in relevant part as follows: "15.0. Except as provided in Section 13 [having to do with tort liability] of this Agreement, neither the Authority nor the Governing Board shall have the power or authority to bind the Conservancy or Districts, or any of them, to any debt, liability, contract, or obligation, or to employ any person on behalf of the parties, or any of them; no debt, liability, contract, obligation, employee, or agent of the Authority or the Governing Board shall be or constitute thereby a debt, liability, contract, obligation, employee, or agent of the parties or any of them. [¶] 15.1. No action or omission of the parties or any of them shall be attributable to the Conservancy or the Districts except as expressly provided in Section 13 of this Agreement."

value of the property had declined substantially. While the appeal was pending, Tucker entered into an agreement with the Eastport trustee in bankruptcy to resolve the appeal by stipulation. In accordance with the parties' stipulation, the Court of Appeal reversed the judgment against Tucker with instructions that the trial court enter judgment in favor of Tucker based on a determination that the principal amount owing on the note was $11,750,000.

In light of the bankruptcy, the note was actually worthless. But because Tucker had "prevailed" in the Eastport litigation, under the terms of the Tucker/MCRA agreement, MCRA did not have the right to rescind. Tucker expected to tender the note and deed of trust to MRCA and demand the $6 million due on the MRCA note.

But the transaction did not proceed as Tucker expected. MRCA sought to acquire the property in the bankruptcy proceeding. It presented an appraisal to the court which valued the property as of October 1996 at $9,350,000, without deducting accumulated tax liens of over $600,000. MRCA represented to the court that it owned the Getty note and the Tucker note, and the debt on both notes exceeded the fair market value of the property.[2] MRCA purchased the property from the bankruptcy trustee for $30,000.

MRCA then filed an action against Tucker for rescission claiming that the Tucker/Eastport litigation had not been resolved in a timely manner. Tucker cross-complained asserting anticipatory breach, and moved for summary judgment on the MRCA note. The court determined that the fact that the Eastport note and deed of trust were worthless was irrelevant and granted summary judgment in Tucker's favor. Tucker obtained a judgment against MRCA for $6,241,184.46, which was affirmed on appeal. And because the MRCA note was unsecured, MRCA had no antideficiency protection. When the judgment was not paid by MRCA, Tucker sought a writ of mandate to order MRCA to pay the judgment.

Tucker also filed this lawsuit, seeking a declaration that the constituent members of the MRCA are jointly and individually liable for the obligations of the MRCA, and that the State of California is liable because all members of the JPA are state agencies. Tucker also sought a declaration that respondents were liable as alter egos of MRCA.

Cross-motions for summary judgment were heard. The trial court denied Tucker's motion and granted defendants' motion, concluding that there is no

---

[2]MRCA had also acquired the Getty note on the property, which was worth about $5 million. The accumulated principal and interest on the Tucker note was about $20 million. It was represented to the bankruptcy court that in order for anyone other than MRCA to be able to purchase and develop the property, approximately $25 million would be necessary to extinguish the outstanding deeds of trust against the property.

liability on the part of the constituent agencies for a JPA obligation. The court subsequently ruled in favor of defendants on the issue of alter ego, finding no factual basis for this theory of recovery.

On November 18, 2000, prior to the court's actual entry of judgment on December 14, 2000, Tucker filed a notice of appeal from the court's ruling. We construe the notice of appeal to have been filed immediately after judgment in accordance with rule 2(c) of the California Rules of Court.

CONTENTIONS ON APPEAL

Appellant makes two contentions on appeal. First, that the Legislature intended that governmental entities forming a JPA be separately liable for the obligations of the JPA. And second, that entities may be liable for the debts of the joint powers agency under traditional theories of alter ego. We address these contentions in turn.

DISCUSSION

1. *Standard of Review*

We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 580-581 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court . . . ." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35]; *Union Bank, supra,* at p. 579.)

2. *Joint Exercise of Powers*

The Government Code[3] sets forth the Joint Exercise of Powers Act at sections 6500 to 6599. As originally enacted in 1921, "the Act merely authorized counties and municipalities to do jointly anything they each could do separately," but in 1947 a section was added that allowed constituent parties "to create a separate board or commission (a joint powers agency) to exercise on their behalf powers they hold in common." (*Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1050 [77 Cal.Rptr.2d 189, 959 P.2d 347].)

Section 6503.5 requires a notice of any agreement creating an agency or entity separate from the parties to the agreement be filed with the Secretary

---

[3]All statutory references are to the Government Code unless otherwise noted.

of State within 30 days after the effective date of the agreement. Section 6506 provides that by designation in the agreement one or more of the parties to the agreement may provide all or a portion of the services to the other parties in the manner provided in the agreement, and may administer or execute the agreement. And section 6508 sets forth the powers of the agency.

3. *Liability of the constituent members for the debts of the JPA*

 Section 6508.1, which is in issue here, sets forth the responsibility of the constituent agencies for the obligations of the joint powers as follows:

"If the agency is not one or more of the parties to the agreement but is a public entity, commission, or board constituted pursuant to the agreement, the debts, liabilities, and obligations of the agency shall be the debts, liabilities, and obligations of the parties to the agreement, unless the agreement specifies otherwise.

"A party to the agreement may separately contract for, or assume responsibility for, specific debts, liabilities, or obligations of the agency."

Appellant contends that "the legislature intended that agencies which form a joint powers authority be liable for its debts." Appellant argues that this legislative intent is clearly manifested in sections 895 and 895.2, which provide such liability for torts, and section 970.8, which requires a local pubic entity to include sufficient funds in their budget to pay all judgments. We disagree.

 The general rules of statutory construction are (1) to ascertain the intent of the Legislature to effectuate the purpose of the law, (2) to give a provision a reasonable and commonsense interpretation consistent with its apparent purpose, which will result in wise policy rather than mischief or absurdity, (3) to give significance, if possible, to every word or part, and harmonize the parts by considering a particular section in the context of the whole, (4) to take matters such as content, object, evils to be remedied, legislation on the same subject, public policy, and contemporaneous construction into account, and (5) to give great weight to consistent administrative construction. (*DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].)

With the foregoing principles in mind, the primary focus is on the language of the statute, "giving the words their usual and ordinary meaning." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19

P.3d 1196].) Where the language of the statute is unambiguous, the Legislature is presumed to have meant what it said and the plain meaning of the statute governs. (*Ibid.*)

 Appellant argues that the first sentence of section 6508.1 confers joint and several liability on the constituent members of a JPA, and the second sentence permits the constituents to agree among themselves to a particular formula of apportionment. But that is not a reasonable or common-sense interpretation of this statute.

The first paragraph unambiguously provides that obligations of the agency will be the obligations of the constituent entities unless they otherwise agree. The second paragraph permits a constituent entity to assume responsibility for an obligation of the agency.

Appellant urges us to look at the context of section 6508.1 and argues that the Government Code consistently imposes liability on the part of the entities forming JPA's. Appellant first cites section 895, which imposes joint and several liability on the constituent members for *torts* committed by a JPA. Section 895 is part of chapter 21 of the Government Code, entitled "Tort Liability Under Agreements Between Public Entities." It provides as follows:

"Whenever any public entities enter into [a joint powers] agreement, they are jointly and severally liable upon any liability which is imposed by any law other than this chapter upon any one of the entitles or upon any entity created by the agreement for injury caused by a negligent or wrongful act or omission occurring in the performance of such agreement.

"Notwithstanding any other law, if a judgment is recovered against a public entity for injury caused in the performance of an agreement, the time within which a claim for such injury may be presented or an action commenced against any other public entity that is subject to the liability determined by the judgment under the provisions of this section begins to run when the judgment is rendered." (§ 895.2.)

The Law Revision Commission comments to section 895 explain that this section imposes liability on each of the parties to a JPA to an injured party for any tort that may occur in the performance of the agreement for which any one of the entitles, or the entity created by the agreement is otherwise liable under the law. The comment also explains that the second paragraph

of the section extends the time for presenting claims or filing actions against other entitles until the first judgment is obtained.[4]

Section 895.4 provides that the public entities "may provide for contribution or indemnification by any or all of the public entities that are parties to the agreement upon any liability arising out of the performance of the agreement." The Law Revision Commission comments state that this section does not affect the right of the injured party to recover the full amount of damages from any one of the public entities under section 895.2.[5]

While these sections make clear that the Legislature intended that member entities of a JPA be liable for the *torts* of the JPA, it simply does not follow that these sections reflect legislative intent that member entities are also liable for the contractual obligations of the JPA.

Equally unpersuasive is appellant's reliance on section 970.8 to support its position. Section 970.8, in part 5 of division 3.6 of the Government Code, "Payment of Claims and Judgments," generally imposes an obligation on the part of local public entities to include sufficient funds in their budgets to pay all judgments. Subdivision (b) of section 970.8 provides that if the revenue used for the maintenance and operation of the local public entity is derived from appropriations of another local public entity, the other entity must appropriate its pro rata share in an amount sufficient for the local entity to pay any judgments.[6] Subdivision (b) specifically excludes JPA's from its application.

A 1975 amendment to section 970.8 deleted the word "tort" preceding "judgment," thus making the section applicable to all judgments. Appellant

---

[4]California Law Revision Commission comments, 32 West's Annotated Government Code (1995 ed.) following section 895, page 505.

[5]Section 895.4.

[6]Section 970.8 provides as follows:

"(a) Each local public entity shall in each fiscal year include in its budget a provision to provide funds in an amount sufficient to pay all judgments in accordance with this article.

"(b) If all or any portion of the revenue used for the maintenance and operation of a local public entity (other than an entity created by an agreement described in Section 895) liable for a judgment is derived from appropriations of another local public entity, such other local public entity shall in each fiscal year appropriate funds equal to its pro rata share of an amount sufficient to permit the local public entity liable for the judgment to pay the judgment in accordance with this article. Such amount shall be paid to the local public entity liable for the judgment and shall be used by such entity to satisfy the judgment. The pro rata share of such other local public entity for each judgment is an amount bearing the same proportion to the total amount of the judgment as the revenue derived from such other local public entity for maintenance and operation during the fiscal year in which the cause of action on such judgment accrued bears to the total revenues used for maintenance and operation during such fiscal year of the local public entity liable for the judgment. For this purpose, such other local public entity shall include in its budget a provision to provide funds sufficient in amount to make the appropriation and payment required by this section."

points out that the exception of JPA's from section 970.8 was carried over when the section was amended to apply to contract as well as tort judgments. Appellant argues that this anomaly was explained by the Law Revision Commission's comments in 1963 when section 970.8 was first adopted that "sufficient financial ability to pay is provided by imposing liability directly upon the parties to the agreement." (Cal. Law Revision Com. com., 32A West's Ann. Gov. Code, *supra*, foll. § 970.8, p. 118.) But this does not support a conclusion that the commission assumed that section 6508.1 imposed liability on the constituent agencies because section 6508.1 was not adopted until 1968.

We agree with appellant that section 970.8 makes clear that the Legislature intended that governmental entities be required to budget in order to be able to satisfy their pro rata share of a judgment against them, whether the judgment was the result of a tort or a contract. But it does not logically follow that this reflects legislative intent that section 6508.1 imposes liability on constituent members for the contractual obligations of the JPA.

Appellant next argues that section 971.2 supports its interpretation of section 6508.1. Section 971.2 provides that "judgments for which a local public entity is liable are legal investments for all trust funds, and for the funds of all insurance companies, banks (both commercial and savings) and trust companies, and for every other local public entity within this state, to the same extent as bonds of the local public entity liable for the judgment." Appellant argues that if the JPA and its constituents are not required to pay a judgment, this provision would be a "legislative hoax" on the public. But this argument is premised on two erroneous assumptions: that JPA's invariably are unwilling or unable to satisfy their judgments based on contractual obligations, and that respondents take the position that MRCA is not required to pay the Tucker judgment, which has not been the position of respondents. In sum, appellant's reliance on section 971.2 is misplaced.

Finally, appellant argues that *Victor Valley Transit Authority v. Workers' Comp. Appeals Bd.* (2000) 83 Cal.App.4th 1068 [100 Cal.Rptr.2d 235] supports its position based on the court's characterization of a JPA as a joint venture. But the point of the comparison in *Victor Valley* is that the JPA is indeed a legally distinct entity, separate and apart from its members. The case simply does not suggest that a JPA has the characteristics of a partnership rather than a corporation, resulting in the imposition of liability upon the members for the contractual obligations of the JPA.

None of appellant's arguments persuade us that the Legislature intended section 6508.1 to mean anything other than what it plainly says, that the

debts of the JPA are the debts of the constituent entities *unless the agreement specifies otherwise.* Here, the agreement specified otherwise, i.e., that the constituent entities would not be responsible for the debts of the JPA. Nor do we find any implication that liability should be imposed because the constituent agencies did not specify an alternative to liability being solely vested in the JPA.

### 4. *Alter Ego*

The evidence before the court in the summary adjudication motion was largely undisputed. It established that the board of directors of the JPA were representatives or nominees of the member agencies, that SMMC is an agency of the State of California, that the executive officer of MRCA was also the executive director of the SMMC, and that the general manager of the Conejo Recreation and Park District was also the treasurer of MRCA and as treasurer was required to pay all sums on outstanding obligations of the MRCA out of its money on deposit. It was also undisputed that SMMC manages the property of MRCA, that by agreement MRCA is required to prepare an annual budget in a form approved by SMMC for approval by the member agencies, and that all receipts and disbursements of the MRCA must be in accordance with the approved budget.

Respondents' objections to appellant's supplemental proffer of "undisputed facts" are well taken, as the "facts" are not supported by specific references to pages and lines in the depositions and exhibits cited. (Cal. Rules of Court, rule 342.) The supplemental separate statement is therefore of no evidentiary value.

Appellant states that it is not clear whether the trial court refused to impose liability on the alter ego theory because it found alter ego never applies to governmental entities, or because the facts did not support its imposition. But in granting respondents' motion the court stated, "The mere fact that the Defendants, or some of them, as constituent members of the MRCA or otherwise, may have had or exercised certain controls over the MRCA is insufficient to hold them liable for the MRCA Judgment." We are satisfied that the court's ruling was based on insufficiency of the evidence.

Appellant contends that because it was undisputed that the member agencies did not assume liability for the obligations of the JPA, it was established that the JPA was used by the SMMC to evade state oversight and engage in transactions in which default was possible. Appellant argues that this sufficiently establishes all necessary factors to support imposition of liability on the part of the respondents as alter egos of the JPA. We disagree.

■ As stated in *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 [99 Cal.Rptr.2d 824], "two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."

■ We agree with respondents that the evidence upon which appellant relies simply does not establish liability of respondents as alter egos of the JPA. There is no evidence of abuse of organizational formalities, or of any diversion of funds. There is no evidence that any fraud was perpetrated on Tucker. The joint powers agreement was of record and Tucker presumably aware of its provisions. Section 6506 specifically permits one organization to administer the JPA, or conduct the services for the others. Here, the joint powers agreement made provision for the executive officer of one of the constituents to serve in the same capacity for the JPA, and the general manager of another constituent to serve as the treasurer.

It was established without dispute that there was no liability on the part of respondents as alter egos of the JPA.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal. The matter is remanded to the trial court for a determination of whether any award of costs in connection with this appeal includes attorney fees.

Boren, P. J., and Nott, J., concurred.

A petition for a rehearing was denied January 28, 2002, and appellant's petition for review by the Supreme Court was denied March 13, 2002.