[No. B196249. Second Dist., Div. Four. June 3, 2009.]

BRANDON S., a Minor, etc., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel. FOSTER FAMILY HOME AND
SMALL FAMILY HOME INSURANCE FUND, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 4. of the Discussion.

COUNSEL

Law Offices of Sanford Jossen and Sanford Jossen for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Doulas M. Press, Assistant Attorney General, Jennifer M. Kim and Chara L. Crane, Deputy Attorneys General, for Defendant and Respondent.

OPINION

WILLHITE, J.—

## INTRODUCTION

In response to the inability of foster parents to obtain insurance for claims arising from foster parent activities, the Legislature created the Foster Family Home and Small Family Home Insurance Fund (the Fund). (Health & Saf. Code, § 1527 et seq.)[1] The Fund has the statutory obligation, subject to procedural and financial limitations, to pay claims filed by foster children against foster parents for occurrences arising from the foster care relationship.

---

[1] All subsequent undesignated statutory references are to the Health and Safety Code.

However, the Legislature limited the Fund's liability by enacting section 1527.3 to exclude coverage for eight classes of claims. At issue here is the exclusion of section 1527.3, subdivision (a), under which the Fund is not liable for "[a]ny loss arising out of a dishonest, fraudulent, *criminal*, or intentional act." (Italics added.)

Appellant Brandon S., a foster child, was molested by the stepson of his licensed foster mother, Monique M. Through his guardian ad litem, he filed a claim with the Fund, alleging that Monique M.'s negligent supervision resulted in the molestation. He sought damages for emotional and physical injuries caused by the molestation. Based on the exclusion for "[a]ny loss arising out of a . . . criminal . . . act" (§ 1527.3, subd. (a)), the Fund denied the claim. Brandon then filed a complaint in the superior court for declaratory relief against the Fund and for negligent supervision against Monique M. Following Monique M.'s default, the court held a bench trial on Brandon's declaratory relief claim against the Fund, and also heard his default prove-up against Monique M. The court awarded Brandon $250,000 in damages against Monique M., but ruled that the Fund had no liability based upon the statutory exclusion of section 1527.3, subdivision (a).

On appeal, Brandon contends that the statutory exclusion does not apply to claims arising from a third party's criminal conduct. Rather, he construes the statute to bar claims arising only from criminal conduct of a foster parent. We disagree. The unambiguous language of the statute bars *any* loss arising from a criminal act, whether the act was committed by the foster parent *or* a third party. Indeed, in four other subdivisions of section 1527.3, the Legislature expressly tied the specified exclusions to conduct by the foster parent. That the Legislature did not so limit the exclusion of subdivision (a) suggests that the omission was intentional. Moreover, nothing in the relevant legislative history supports Brandon's interpretation of the statute. Further, when creating the Fund, the Legislature also sought to deal with the insurance crisis by enacting Insurance Code former section 676.2, now Insurance Code section 676.7, to ensure that foster parents have access to homeowner's, tenant's, and liability insurance, including liability coverage for the type of claim involved here. We hold, therefore, that section 1527.3, subdivision (a), precludes the Fund's liability for losses caused by criminal acts, whether committed by the foster parent or a third party.

Brandon further contends that the trial court's ruling violates equal protection. Because Brandon did not raise this claim below, it has been forfeited. Lastly, Brandon urges that the trial court awarded him insufficient damages in his action against Monique M. In the nonpublished portion of this opinion, we reject that claim. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties presented the case on the following stipulated facts. Brandon is a dependent of the juvenile court (Welf. & Inst. Code, § 300). In July 2003, when he was nearly 12 years old, he was placed in a licensed foster home operated by Monique M. Three other dependent minors also resided there. Monique M.'s 13-year-old stepson Eric B. regularly visited the home. During these visits, Eric B. sexually molested Brandon and two of the other children living there.

In February 2004, the police arrested Eric B. Brandon was removed from the home. Proceedings were commenced against Eric B. in juvenile court (Welf. & Inst. Code, § 602), resulting in Eric B.'s admission that he had committed a lewd act on a child under 14 years of age (Pen. Code, § 288, subd. (a)). The State Department of Social Services revoked Monique M.'s license, finding that she provided negligent supervision for the children under her care.

Brandon, through his guardian ad litem, filed a claim with the Fund in which he sought damages for "[e]motional and physical injuries" arising from the molestation, and alleged that Monique M.'s negligent supervision caused the molestation. The Fund denied the claim, relying on the exclusion of section 1527.3, subdivision (a). Brandon then filed suit in superior court in which he alleged a cause of action against Monique M. for negligent supervision and sought declaratory relief that the Fund was obligated to pay his claim for damages arising out of Monique M.'s negligence.[2] Monique M. failed to respond and a default was entered against her.

At a combined default prove-up against Monique M. and declaratory relief trial against the Fund, two issues were presented for the trial court to resolve. The first was the legal issue whether the Fund was liable for Brandon's claim. The trial court concluded that the statutory exclusion under section 1527.3, subdivision (a), for any loss arising out of a criminal act precluded the Fund's liability because Brandon's damages directly arose from Eric B.'s criminal sexual molestation. The second issue was factual: whether Monique M. was liable to Brandon based on her negligent supervision. The trial court found that she had been negligent in leaving Brandon unsupervised in the care of

---

[2] Brandon also sued the County of Los Angeles but subsequently settled with it for $5,000. In addition, Brandon named the Doe Foster Family Agency, Eric B. and Eric B.'s father as defendants but ultimately dismissed them from the lawsuit.

Eric B. who then sexually molested him. The court awarded Brandon $250,000 in damages against Monique M.[3]

This appeal by Brandon follows.

## DISCUSSION

1. *Historical Background*

In 1986, the Legislature recognized that a crisis existed in the ability of foster family homes and small family homes to obtain homeowner's, renter's, and liability insurance to cover the rising number of claims made against them by foster children and their parents or legal guardians.[4] The Legislature further recognized that this inability put the personal assets of foster parents at risk and imperiled the foster care system. (§ 1527, added by Stats. 1986, ch. 1330, § 3, p. 4690; see *Hill v. Newkirk* (1994) 26 Cal.App.4th 1047, 1052 [31 Cal.Rptr.2d 859].) The Legislature addressed these problems in two interrelated ways.

First, the Legislature created the Fund by adding section 1527 et seq., to the Health and Safety Code. "The purpose of the fund is to pay, on behalf of foster family homes and small family homes . . . , claims of foster children, their parents, guardians, or guardians ad litem resulting from occurrences peculiar to the foster-care relationship and the provision of foster-care services." (§ 1527.1.) Thus, section 1527.2 provides that "[t]he fund, subject to this article, shall pay, on behalf of foster family homes and small family homes, any claims of foster children, their parents, guardians, or guardians ad litem for damages arising from, and peculiar to, the foster-care relationship

---

[3] The evidence presented on the issue of damages will be set forth later in the nonpublished portion of this opinion when we address Brandon's contention that the trial court's award is inadequate as a matter of law.

[4] Section 1502, subdivision (a)(5) and (6), define a "foster family home" and "small family home" as follows: "(5) 'Foster family home' means any residential facility providing 24-hour care for six or fewer foster children that is owned, leased, or rented and is the residence of the foster parent or parents, including their family, in whose care the foster children have been placed. The placement may be by a public or private child placement agency or by a court order, or by voluntary placement by a parent, parents, or guardian. It also means a foster family home described in Section 1505.2. [¶] (6) 'Small family home' means any residential facility, in the licensee's family residence, that provides 24-hour care for six or fewer foster children who have mental disorders or developmental or physical disabilities and who require special care and supervision as a result of their disabilities. A small family home may accept children with special health care needs, pursuant to subdivision (a) of Section 17710 of the Welfare and Institutions Code. In addition to placing children with special health care needs, the department may approve placement of children without special health care needs, up to the licensed capacity."

and the provision of foster-care services, or shall reimburse foster family homes and small family homes for those damages."

■ Section 1527.6 requires a claimant to file a claim with the Fund "within the applicable period of limitations for the appropriate civil action underlying the claim" (§ 1527.6, subd. (b)), and forbids any civil action against the foster parent unless such a claim has been rejected, or has been approved and paid and damages in excess of the payment are sought (§ 1527.6, subd. (d)). Section 1527.5 provides: "The fund shall be liable, if a claim is approved, to pay on behalf of each licensed foster family home or small family home, all sums which the foster family home or small family home is obligated to pay as a result of a valid claim of bodily injury or personal injury arising out of the activities of a foster parent or foster parents, which occurs while the foster child resides in the foster family home or small family home. Claims specified in this section of a foster child or a parent, guardian, or guardian ad litem of a foster child shall be the sole responsibility of the fund."

In creating the Fund, however, the Legislature limited the amount of the Fund's liability, and the classes of claims for which the Fund is liable. Section 1527.4 provides: "Notwithstanding any other provision of this article, the fund shall not be liable for damages in excess of three hundred thousand dollars ($300,000) for any single foster family home . . . for all claims arising due to one or more occurrences during a single calendar year." Moreover, the Legislature excluded coverage for eight classes of claims. Section 1527.3 provides:

"The fund shall not be liable for any of the following:

"(a) *Any loss arising out of a dishonest, fraudulent, criminal, or intentional act.*

"(b) Any occurrence which does not arise from the foster-care relationship.

"(c) Any bodily injury arising out of the operation or use of any motor vehicle, aircraft, or watercraft owned or operated by, or rented or loaned to, any foster parent.

"(d) Any loss arising out of licentious, immoral, or sexual behavior on the part of a foster parent intended to lead to, or culminating in, any sexual act.

"(e) Any allegation of alienation of affection against a foster parent.

"(f) Any loss or damage arising out of occurrences prior to October 1, 1986.

"(g) Exemplary damages.

"(h) Any liability of a foster parent which is uninsured due solely to the foster parent's failure to obtain insurance specified in [former] Section 676.2 [(now § 676.7)] of the Insurance Code.[5] Nothing in this subdivision shall be construed to expand the liability of the fund with respect to insured foster parents." (Italics added.)

At the same time the Legislature created the Fund, the second way it addressed the insurance crisis facing foster parents was to add former section 676.2 (now § 676.7; see fn. 5, *ante*) to the Insurance Code, seeking to ensure that foster parents would be able to obtain homeowner's, tenant's, and personal liability insurance policies.[6] The statute prohibits insurers from refusing to issue and from cancelling homeowner's or tenant's policies for the sole reason that the insured engages in licensed foster care activities (Ins. Code, § 676.7, subd. (a)), and it requires coverage for a foster child under such policies to be the same as that for a natural child (*id.*, subd. (b)). The statute, however, includes certain limitations on the liability coverage of homeowner's and tenant's policies issued to foster parents. Thus, it provides that "[i]t is against public policy for a policy of homeowner's or tenant's insurance subject to this section to provide liability coverage for" certain specified losses (*id.*, subd. (c)), including losses "of a type payable by" the Fund (*id.*, subd. (c)(1)). The statute also excludes homeowner's and tenant's policies issued to foster parents from covering some of the same losses excluded from coverage by the Fund: "Alienation of affection of a foster child," "Any loss arising out of licentious, immoral, or sexual behavior on the

---

[5] As originally enacted, Insurance Code former section 676.2, which governed insurance for foster parents, contained a sunset clause. (Stats. 1986, ch. 1330, § 4, pp. 4693–4694.) In 1990, the statute was amended to delete the sunset clause and was renumbered as Insurance Code section 676.7. (Stats. 1990, ch. 216, § 85, p. 1424.) At the same time, a new Insurance Code section 676.2 was enacted, which regulates cancellation and changes in rates and coverage for commercial insurance policies. (Stats. 1990, ch. 216, § 84, pp. 1421–1424.) By apparent oversight, however, Health and Safety Code section 1527.3, subdivision (h), was not amended to reflect the renumbering of Insurance Code former section 676.2.

[6] Insurance Code section 676.7 provides in full:

"(a) No admitted insurer, licensed to issue and issuing homeowner's or tenant's policies, as described in Section 122, shall (1) fail or refuse to accept an application for that insurance or to issue that insurance to an applicant or (2) cancel that insurance, solely on the basis that the applicant or policyholder is engaged in foster home activities in a licensed foster family home or licensed small family home, as defined in Section 1502 of the Health and Safety Code.

"(b) Coverage under policies described in subdivision (a) with respect to a foster child shall be the same as that provided for a natural child. However, unless specifically provided in the policy, there shall be no coverage expressly provided in the policy for any bodily injury arising out of the operation or use of any motor vehicle, aircraft, or watercraft owned or operated by, or rented or loaned to, any foster parent.

"(c) It is against public policy for a policy of homeowner's or tenant's insurance subject to this section to provide liability coverage for any of the following losses:

part of a foster parent intended to lead to, or culminating in, any sexual act," and *"Any loss arising out of a dishonest, fraudulent, criminal, or intentional act." (Id.,* subd. (c)(3)–(5), italics added; cf. Health & Saf. Code, § 1527.3, subds. (a), (d), (e).)

Although the Legislature thus precluded a homeowner's or tenant's policy from providing liability coverage for certain losses arising from the foster care relationship, it did not leave foster parents without recourse to liability insurance to cover such losses. As to claims arising from the foster care relationship that are *not* excluded from homeowner's and tenant's policies, the statute permits insurers to "provide a special endorsement to a homeowners' or tenants' policy covering" such claims. (Ins. Code, § 676.7, subd. (e).) As to claims arising from the foster care relationship that *are* excluded from homeowner's and tenant's policies, the statute permits an insurer to "provide by a separate policy for some or all of" such claims. (Ins. Code, § 676.7, subd. (f).) As here relevant, therefore, insurers may provide separate foster care liability policies to cover claims that the statute excludes from homeowner's and tenant's policies, including, inter alia, claims for "[a]ny loss arising out of a . . . criminal . . . act" (*id.,* subd. (c)(5)). Of course, under Insurance Code section 533, no such insurance policy may provide coverage for criminal conduct by the insured foster parent. But it may provide coverage for a foster parent's negligent supervision that results in a foster child being injured by the criminal conduct of a third party.[7]

## 2. *Analysis of the Fund's Liability for Brandon's Claim*

As we have noted, the Fund's purpose is to pay claims of a foster child "resulting from occurrences peculiar to the foster-care relationship and the

---

"(1) Claims of a foster child, or a parent, guardian, or guardian ad litem thereof, of a type payable by the Foster Family Home and Small Family Home Insurance Fund established by Section 1527.1 of the Health and Safety Code, regardless of whether the claim is within the limits of coverage specified in Section 1527.4 of the Health and Safety Code.

"(2) An insurer shall not be liable, under a policy of insurance subject to this section, to any governmental agency for damage arising from occurrences peculiar to the foster-care relationship and the provision of foster-care services.

"(3) Alienation of affection of a foster child.

"(4) Any loss arising out of licentious, immoral, or sexual behavior on the part of a foster parent intended to lead to, or culminating in, any sexual act.

"(5) Any loss arising out of a dishonest, fraudulent, criminal, or intentional act.

"(d) There shall be no penalty for violations of this section prior to January 1, 1987.

"(e) Insurers may provide a special endorsement to a homeowners' or tenants' policy covering claims related to foster care that are not excluded by subdivision (c).

"(f) Insurers may provide by a separate policy for some or all of the claims related to foster care that are excluded by subdivision (c)."

[7] Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

provision of foster-care services." (§ 1527.1.) Brandon argues that his claim falls within that broad mandate because he has successfully established that Monique M. was negligent and that her negligence resulted in his sexual molestation by Eric B. He further contends that section 1527.3 contains no specific exclusion for "claims by foster children against foster parents arising out of the foster child relationship *which result from the illegal acts of third parties as a result of the negligence of foster parents.*" (Underscoring omitted, original italics.) Therefore, according to Brandon, the Fund is required to pay the claim.

In determining the scope of the Fund's liability, we are guided by well-settled principles. Interpretation of a statute is a question of law. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) We conduct a de novo review of the trial court's decision. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 76–77 [115 Cal.Rptr.2d 3].) When the statutory language is clear, it governs. (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1260 [93 Cal.Rptr.2d 725].)

Section 1527.3 provides: "The fund shall not be liable for any of the following: [¶] (a) *Any loss arising out of a* dishonest, fraudulent, *criminal,* or intentional *act.*" (Italics added.) Here, it is undisputed that Brandon's "loss" directly arises out of Eric B.'s criminal conduct: Brandon seeks monetary damages to compensate him for the harm caused by the molestation. Under the plain meaning of the statute, therefore, the Fund is not obligated to pay the claim. That Monique M.'s negligence permitted the molestation to occur is irrelevant to the exclusion. The "loss" arises out of Eric B.'s criminal conduct, and *any* loss arising out of criminal conduct is excluded.

Brandon argues that subdivision (a) should be read to exclude coverage only for a criminal act committed by a foster parent as opposed to a third party. He urges that the "exception set forth in [section] 1527.3 (a) is clearly ambiguous [because it] does not indicate whether it refers solely to the criminal acts of foster parents or to the criminal act of anyone." We find no ambiguity. The Fund is not liable for "[a]ny loss arising out of a . . . criminal . . . act." The word "any" is not ambiguous. "[T]he ordinary meaning of the word 'any' is clear, and its use in a statute unambiguously reflects a legislative intent for that statute to have a broad application. [Citations.]" (*Department of California Highway Patrol v. Superior Court* (2008) 158 Cal.App.4th 726, 736 [70 Cal.Rptr.3d 280].) Here, use of the word "any" conveys the intent to exclude all losses arising from criminal acts, without restriction. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934] ["the word 'any' means without limit and no matter what kind"]; see also *Department of California Highway*

*Patrol v. Superior Court, supra,* 158 Cal.App.4th at p. 736.) Thus, under section 1527.3, subdivision (a), the Fund has no liability for "any loss" caused by a criminal act regardless of whether the perpetrator is the foster parent or a third party. ■ "Where the language of the statute is unambiguous, the Legislature is presumed to have meant what it said and the plain meaning of the statute governs." (*Tucker Land Co. v. State of California* (2001) 94 Cal.App.4th 1191, 1198 [114 Cal.Rptr.2d 891].)

Moreover, the Legislature knew how to limit exclusions to an act of the foster parent. Each of the exclusions found in section 1527.3, subdivisions (c), (d), (e) and (h), is explicitly based upon conduct by the foster parent. Thus, subdivision (c) precludes coverage for "[a]ny bodily injury arising out of the operation or use of any motor vehicle, aircraft, or watercraft *owned or operated by, or rented or loaned to, any foster parent.*" (Italics added.) Subdivision (d) applies to losses "arising out of licentious, immoral, or sexual behavior *on the part of a foster parent* intended to lead to, or culminating in, any sexual act." (Italics added.) Subdivision (e) applies to "[a]ny allegation of alienation of affection *against a foster parent,*" and subdivision (h) to "[a]ny liability of a foster parent which is uninsured due solely to *the foster parent's failure to obtain insurance* specified in Section 676.2 [(now § 676.7)] of the Insurance Code." (Italics added; see also fn. 5, *ante.*)

■ By contrast, section 1527.3, subdivision (a) contains no language limiting the excluded losses to prohibited conduct by the foster parent. It applies, as here relevant, to "[a]ny loss arising out of a . . . criminal . . . act." The only reasonable conclusion from this broad language is that the Legislature consciously chose not to condition the exclusion on criminal conduct by the foster parent. (See *Shaw v. McMahon* (1987) 197 Cal.App.3d 417, 425 [243 Cal.Rptr. 26].)

■ Brandon suggests that because his molestation arose out of Monique M.'s negligent supervision in the foster care relationship, it is an occurrence which the Fund must cover pursuant to sections 1527.1 and 1527.2. But he overlooks the effect of section 1527.3, which expressly limits the types of losses for which the Fund is liable even though such losses arise from the foster care relationship. We must give effect to that specific statute limiting the Fund's general purpose. " 'It is well settled . . . that a general provision [(here, §§ 1527.1 & 1527.2)] is controlled by one that is special [(here, § 1527.3)], the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' [Citation.]" (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].)

Brandon also relies on selected portions of the legislative history. But when, as here, the plain language of the statute is clear and unambiguous, "no court need, or should, go beyond that pure expression of legislative intent." (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118].) In any event, nothing in the legislative history *directly* addresses subdivision (a) of section 1527.3. Most of the documents cited by Brandon merely discuss the general point that the Fund's purpose is to pay for claims arising out of the foster care relationship. Yet, as we have observed, through the enactment of section 1527.3, the Legislature also severely limited the class of claims for which the Fund is liable. Thus, the true issue in the present case is the scope of section 1527.3 and, in particular, the criminal act exclusion found in subdivision (a). On that point, the legislative history is silent.

The other documents cited by Brandon do not support his interpretation. For instance, Brandon claims that the Assembly Ways and Means Committee Republican Analysis of Senate Bill No. 1159 (1985–1986 Reg. Sess.) "clarifies the distinction of the [bill's] authors between exclusions arising out of illegal acts by foster parents as compared to illegal acts by third parties." (Underscoring omitted.) Not only does the analysis not support that claim, it actually supports the conclusion that the criminal act exclusion includes illegal acts of a third party. The analysis states "[t]he bill is worthwhile in that it is of . . . limited scope (the fund is not liable for any claims for losses arising out of intentional acts, punitive damages, or losses arising out of licentious, immoral, or sexual behavior on the part of the foster parent)." The phrase "on the part of the foster parent" modifies only the exclusion for losses arising out of licentious, immoral or sexual behavior. The first two exclusions (intentional acts and punitive damages) remain unmodified, exactly as now set forth in subdivisions (a) and (g) of section 1527.3, with the addition that subdivision (a) also includes "dishonest, fraudulent, [and] criminal" conduct as part of its exclusion. Further, the statement that Senate Bill No. 1159 has a limited scope supports the conclusion that the criminal act exclusion applies to foster parents *and* third parties because that interpretation limits the scope of liability created by the law.

Brandon also cites a press release issued by Senator Ed Royce, the author of Senate Bill No. 1159 (1985–1986 Reg. Sess.), shortly before the law was enacted. The press release states, among other things, that the new law would establish the Fund but that "[l]iability arising out of illegal acts by a foster parent would not be covered." This press release, a document of unknown authorship, is not a proper source of legislative history. (See *Williams v. Garcetti* (1993) 5 Cal.4th 561, 569 [20 Cal.Rptr.2d 341, 853 P.2d 507] ["In construing a statute 'we do not consider the motives or understandings of an individual legislator even if he or she authored the statute.' "].)

Urging that the Fund is the equivalent of insurance, Brandon relies on case law interpreting insurance policies to support coverage of his claim. But the Fund is *not* insurance. "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, § 22.) The Fund does not issue insurance policies, collect premiums, make profits or assume a contractual obligation to any putative insured. Instead, the Fund is an entity created by statute. Its statutory obligation is to pay claims, subject to a specified financial limitation, that arise out of the foster care relationship *as long as its liability for the claim is not excluded by section 1527.3.* Because the Fund is a creature of statute, the scope of its liability is governed by rules of statutory construction, not rules applicable to construing insurance contracts. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1020, fn. 9 [278 Cal.Rptr. 64, 804 P.2d 689].) Thus, Brandon's reliance on cases that have interpreted a liability insurance policy to provide coverage when the insured's negligence results in a third party sexually molesting a child in the insured's care is misplaced. (*National Union Fire Ins. Co. v. Lynette C.* (1991) 228 Cal.App.3d 1073 [279 Cal.Rptr. 394] [foster care liability policy covered claim against foster mother who negligently failed to protect foster child from sexual molestation by her husband]; *American States Ins. Co. v. Borbor by Borbor* (9th Cir. 1987) 826 F.2d 888 [comprehensive insurance policy issued to husband and wife operators of a nursery school covered claims where wife's negligence permitted husband to molest many of the children].)

That the Fund's full title—the Foster Family Home and Small Family Home Insurance Fund—includes the word "insurance" does not change this conclusion. We note, for instance, that the California Insurance Guarantee Association (CIGA) includes "insurance" in its title, but its obligations, like those of the Fund, derive solely from statute and not from principles of contractual interpretation. Thus, CIGA's obligations are not coextensive with that of the insolvent insurer. (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 557 [70 Cal.Rptr.2d 295]; *R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 599–600 [1 Cal.Rptr.2d 405].) In short, the Fund's statutory title does not obviate the need to use rules of statutory construction to interpret the scope of the Fund's coverage rather than rules for construing provisions of an insurance contract.

In support of his assertion that the Legislature intended the scope of coverage by the Fund to be interpreted like insurance, Brandon refers to a typed three-page document entitled "SB 2613 Amendments" found in the statute's legislative history file. A handwritten notation on the document indicates that it was given to a staff member of Senator Ed Royce, the author of the bill. But neither the author nor original source of the document is stated. Brandon relies upon the fact that the document includes the words

"Coverages (modeled after the Mission Insurance Co's policy)" to suggest that the Legislature intended the Fund's liability to be coextensive with that of an insurance company. However, this passing reference in a document of unknown authorship to an unknown insurance policy is not persuasive evidence that the Legislature intended the statutory provisions limiting the scope of the Fund's coverage to be interpreted like the provisions of an insurance policy.

Further, Brandon is incorrect in asserting that the Fund "serve[s] in the place of insurance because foster parents could not obtain insurance." (Italics omitted.) True, the Fund covers certain losses arising from the foster care relationship, and such covered losses "shall be the sole responsibility of the fund." (§ 1527.5.) But those covered losses are limited in scope by section 1527.3. Moreover, as we have mentioned in our discussion of the Fund's historical background, when the Legislature created the Fund, it also enacted Insurance Code former section 676.2, now Insurance Code section 676.7, to ensure that foster parents would have access to homeowner's, tenant's, and personal liability insurance policies. In subdivisions (a) and (b), that Insurance Code statute prohibits insurers from refusing to issue and from cancelling homeowner's or tenant's policies for the sole reason that the insured is a foster parent, and it requires that coverage for a foster child under such policies be the same as that for a natural child. (Ins. Code, § 676.7, subds. (a), (b).) In subdivision (c), the statute also prohibits homeowner's and tenant's policies from providing liability coverage for claims "of a type payable by the" Fund (*id.*, subd. (c)(1)) and for certain losses that are likewise excluded from the Fund (*id.*, subd. (c)). However, the statute permits homeowner's and tenant's polices, by special endorsement, to provide coverage for foster-care-related losses that are *not* excluded by subdivision (c). (*Id.*, subd. (e).) And significantly for the instant case, in subdivision (f) it permits insurers to provide separate foster care liability policies to cover losses that *are* excluded from homeowner's and tenant's policies by subdivision (c), including as here relevant claims for "[a]ny loss arising out of a . . . criminal . . . act" (*id.*, subd. (c)(5)).

As we have observed in our earlier discussion of the statutory scheme, Insurance Code section 533 precludes any insurance policy from insuring against criminal conduct by the insured foster parent, but not from insuring against a foster parent's negligent supervision that results in a foster child being injured by the criminal conduct of a third party. Thus, a foster care liability policy permitted by current Insurance Code section 676.7, subdivision (f), would cover the type of claim made by Brandon in the instant case, even though not covered by the Fund. Indeed, such a policy was involved in one of the insurance coverage cases cited by Brandon. (See *National Union Fire Ins. Co. v. Lynette C., supra,* 228 Cal.App.3d at p. 1075 ["The only issue on appeal is whether the *foster parents' liability insurance policy* issued by

National affords coverage to [the foster mother] who negligently failed to protect [the foster child] from sexual molestation by [the] foster father." (Italics added.)]; *id.* at pp. 1076–1077 [policy covered " 'all sums which the Insured shall become legally obligated to pay as damages because of any act, error or omission of the Insured and *arising out of the Insured's activities as a Foster Parent occurring while the foster child is in the care and custody of the Foster Parent*' " (italics added)].)

Further, it is clear that the Legislature expected foster parents to obtain such insurance. One of the claims that section 1527.3 explicitly excludes from coverage by the Fund is "[a]ny liability of a foster parent which is uninsured due solely to the foster parent's failure to obtain insurance specified in Section 676.2 [(now § 676.7)] of the Insurance Code." (§ 1527.3, subd. (h); see fn. 5, *ante.*) The Legislature thus fully expected foster parents to obtain insurance, including liability insurance, for foster care activities as permitted by Insurance Code former section 676.2 (now § 676.7), and did not intend the Fund to be a substitute for that insurance if the sole reason coverage was unavailable was the foster parent's failure to obtain it. In short, the Fund does not wholly supplant insurance to cover foster care activities, and section 676.7 permits coverage by foster care liability policies for a claim such as Brandon's.

Finally, Brandon asserts that excluding Fund coverage for claims by foster children based on negligent supervision by the foster parent resulting in injury by third party criminal conduct is "bad law, bad policy and bad for those directly affected—dependent minors injured in foster care and foster parents who may be personally liable." The argument, however, is more appropriately directed to the Legislature. Although legitimate policy questions are raised by the legislative decision to exclude coverage for a claim like Brandon's, we decline to rewrite the statutory language and depart from governing principles of statutory construction to reach the result Brandon seeks. That is a task for the Legislature. We simply hold that section 1527.3, subdivision (a), means what it says: the Fund is not liable for "[a]ny loss arising out of a . . . criminal . . . act," whether that act is committed by the foster parent or a third party.

3. *Brandon's Equal Protection Claim Has Been Forfeited*

Brandon contends that applying section 1527.3, subdivision (a) to preclude the Fund's liability on his claim results in a denial of equal protection. He urges that a foster child placed in a licensed foster home (as he was) is

treated differently from a child placed in a certified foster home.[8] Brandon argues that "the fact exists that there is a bifurcated system for the placement of dependent minors which includes both certified and [licensed] foster homes. [¶] . . . Foster homes cannot be both licensed and certified." Licensed homes are covered by the Fund (§ 1527, subds. (c), (d)) but, according to Brandon, "[c]ertified homes are *often* covered by insurance with a typical limit of $1 million dollars"[9] and it "is common knowledge that in a certified home, where insurance is provided, general insurance principles apply." (Italics added.) Based upon these factual allegations, Brandon contends: "A dependent child who was placed in a licensed home should not suffer defeat of his claim [that a foster parent's negligence resulted in his sexual molestation by a third party] by operation of [section 1527.3, subdivision (a)] where a child in a certified home who suffers the same tragic fate with the same facts would be afforded coverage under the general principles of insurance law if private insurance was available." "This is a violation of Constitutional equal protection for all dependent minors placed in foster care because those placed in licensed homes do not enjoy the same panoply of rights for recovery in the event of harm while in foster care which dependent minors placed in certified homes enjoy. The fact that the placement [in either a licensed or certified home] is itself made at random exemplifies the arbitrariness of the application of The Fund." (Underscoring omitted.)

Brandon did not raise this equal protection contention in the trial court. Therefore, he never offered any evidence to support the various factual allegations set forth in the previous paragraph, allegations which go to the core of his contention.[10] Because the Fund did not have a chance to respond to any of Brandon's evidentiary claims and the trial court did not have an opportunity to pass on these points, Brandon may not raise this theory for the

---

[8] The difference between the two types of homes is their source of authorization; a foster family agency *certifies* a foster home whereas the government (state or county) *licenses* a foster home. (§ 1506.6; see also § 1502.)

[9] At another point in his briefs, Brandon is more equivocal about whether certified homes carry insurance. He states: "If a dependent is in a certified home, where insurance *may* be provided, general insurance principles apply." (Italics added, fn. omitted.)

[10] Prior to argument, Brandon requested that we take judicial notice of the blanket agreement between the County of Los Angeles and foster family agencies. Brandon urged that the document, which he conceded had not been introduced in the proceedings below, "demonstrates and illustrates the County of Los Angeles policy for requiring foster family agencies it employs to provide liability insurance. This agreement, while applicable only to Los Angeles County, reflects the disparate policy for providing liability insurance for certified homes in the State. Some counties require that foster family agencies provide insurance coverage to foster families in the event of injury to foster children and some do not." We denied the request because the document had not been presented to the trial court. (See, e.g., *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].)

first time on appeal. (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879 [242 Cal.Rptr. 184].)

4.  *Sufficiency of the Damages Award**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Manella, J., concurred.

A petition for a rehearing was denied June 19, 2009, and appellant's petition for review by the Supreme Court was denied September 17, 2009, S174473.

---

*See footnote, *ante*, page 815.